RUTH NYBERG AND RAYMOND NYBERG, HER HUSBAND, APPELLANTS, *v.* JOHN E. KIRBY, ET AL., RESPONDENTS.

No. 3495

January 19, 1948.

188 P.2d 1006.

*Morgan, Brown & Wells,* of Reno, for Appellants.

*Morley Griswold and George L. Vargas,* both of Reno, for Respondents.

## OPINION

By the Court, HORSEY, J.:

The parties to this appeal will be designated, for convenience, as plaintiffs and defendants, respectively, as they were in the lower court.

It is admitted, in the defendant's answer to the amended complaint, that on the 8th day of July 1944, the plaintiff, Ruth Nyberg, accompanied defendant Harriet Katherine Kirby, riding in an automobile truck, being driven by said Harriet Katherine Kirby, on a trip from the Wild Horse Ranch to Elko, Nevada, such trip being made by Mrs. Kirby at the request of her husband, John E. Kirby, on behalf of himself and the other partners owning and operating said ranch, and for the purpose of obtaining lumber, tile and other supplies for said ranch.

It is alleged, in paragraph VII of plaintiffs' amended complaint, as follows:

"That thereafter, on said day, on the return trip from Elko, Nevada, to said ranch, at a point on the public highway about twenty-eight miles north of Elko, Nevada, while said Ruth Nyberg was such passenger in said automobile driven and operated by said Harriet Katherine Kirby as agent for and acting within the scope of her employment by said partners, the said Harriet Katherine Kirby negligently and carelessly drove and operated said automobile truck and failed to properly control the same, and caused and permitted the same to run off said highway and to overturn several times, thereby causing the injuries hereinafter described."

Defendants, in paragraph III of their answer to the amended complaint, admitted that the automobile truck turned over at the time and place mentioned in the amended complaint, and that the plaintiff, Ruth Nyberg, was then in the said automobile truck, and that same was driven and/or operated by the said Harriet Katherine Kirby, and that said Harriet Katherine Kirby was the agent and acting for the defendant partners, but denied that said Harriet Katherine Kirby was employed by the said partners.

Defendants, further in said paragraph III of their answer, and answering particularly the above-quoted

paragraph VII of the amended complaint, have denied that the said Harriet Katherine Kirby negligently and/or carelessly drove and/or operated said automobile truck, have denied that she failed to properly control the same, and have denied that she permitted the said automobile truck to run off the said highway.

The defendants have denied, for lack of knowledge or information, the allegations of paragraph VIII of the amended complaint, alleging in detail the injuries suffered by plaintiff, Ruth Nyberg, and have denied that she was damaged, as claimed by plaintiffs in said paragraph VIII, in the sum of $30,000, or any other sum, or at all.

It is admitted by defendants that plaintiffs, Ruth Nyberg and Raymond Nyberg, are wife and husband; that defendants, John E. Kirby and Harriet Katherine Kirby, are husband and wife; that defendants, William E. Duffin, George W. Ford and John E. Kirby are, and were at the time in the amended complaint mentioned, partners, and, as such, were the owners of a ranch and engaged in the business of ranching, in Elko County, Nevada, under the firm name and style of Wild Horse Ranch. It is further admitted by the defendants, John E. Kirby, William E. Duffin and George W. Ford, that said defendants, during all the times mentioned in the amended complaint, were the owners of a certain Dodge Pickup automobile truck, Model 1940, Motor No. T105—15480, bearing a California license.

Defendants have alleged certain facts which they alleged constituted contributory negligence on the part of the plaintiff, Ruth Nyberg, but, as the trial court did not find such defense to have been established by the evidence, we will not enumerate or consider same further.

In paragraph VI of the amended complaint, it is alleged positively that "at the request of said partners, the plaintiff, Ruth Nyberg, accompanied said Harriet Katherine Kirby as a *passenger* in said truck and

assisted her in obtaining and loading said supplies and lumber." And it is alleged, by way of recital, in paragraph VII of the amended complaint, that said Ruth Nyberg was a *passenger* in said automobile truck when same overturned. (Italics ours.)

Defendants, in paragraph II of their answer to the amended complaint, have denied "that the plaintiff, Ruth Nyberg, at the request of the said partners, or any of them, accompanied the said Harriet Katherine Kirby as a *passenger* in said truck, and denied that the said Ruth Nyberg assisted the said Harriet Katherine Kirby in obtaining and/or loading supplies and/or lumber on the said truck." (Italics ours.)

In paragraph I of their separate answer to the amended complaint, and as their separate and second defense thereto, the defendants employed the following language:

"That the defendants, at all times denying that the said plaintiff, Ruth Nyberg, accompanied the said Harriet Katherine Kirby at the request of the defendants, *and* for the purpose of assisting her in obtaining and loading supplies and lumber," etc. (Italics ours.)

It is noted that in neither of the two above-mentioned instances do the defendants deny that the plaintiff, Ruth Nyberg, accompanied the defendant, Harriet Katherine Kirby, at the request of the said partners, but, in the first instance, the effect of the words employed is to deny that she accompanied her as a *passenger,* and the effect of such allegation in the second instance above mentioned is not to deny that she accompanied Harriet Katherine Kirby *at the request of the defendants,* but to deny that she accompanied her at such request *and* for the purpose of assisting her in obtaining and loading supplies and lumber.

The defendants, as a further and separate answer to the amended complaint, and as a further and third defense thereto, have alleged as follows:

"I. That the said plaintiff, Ruth Nyberg, accompanied

the said Harriet Katherine Kirby as a *guest* on said trip, and that the said defendant Harriet Katherine Kirby drove said truck in a careful manner, and was not grossly negligent, or negligent at all, in the management, handling and operation of said truck." (Italics ours.)

And the plaintiffs, by paragraph II of their reply, deny each and every allegation of the above third and separate defense, thus joining issue upon the two most important issues involved in the case, to-wit:

1. Was the plaintiff, Ruth Nyberg, a passenger or a guest in the automobile truck at the time same overturned and she was injured?

2. Was Mrs. Kirby negligent in the manner in which she drove and/or operated the automobile truck, and/or in failing to properly control the same, and was such negligence, on her part, the proximate cause of the injuries suffered by Ruth Nyberg?

The issue of negligence involved in the case does not become precise, as to degree, until the determination of the issue of whether the plaintiff, Ruth Nyberg, was a passenger or a guest at the time of the accident. The lower court, in that court's decision in the instant case, specifically held and decided that, upon the basis of the facts established and proven by the evidence, Ruth Nyberg was a guest, and not a passenger, at the time the automobile truck overturned, resulting in her injuries. The trial court further held, in accordance with the law as provided in sec. 4439, N.C.L. 1931–1941 Supp. (our so-called "Guest" Statute), that, inasmuch as the plaintiff, Ruth Nyberg, was a guest and not a passenger, to render the defendants liable for damages for her injuries in such accident, the defendant, Harriet Katherine Kirby, would have to be proven to have been grossly negligent in guiding or operating said automobile truck, and/or in failing to properly control the same. And the trial court further held and decided that, in the absence of any proof of gross negligence, the plaintiffs

could not recover, and thereupon rendered judgment that plaintiffs take nothing by reason of said action, and that defendants have judgment for their costs. A motion was made by plaintiffs for a new trial, which was heard, and denied by the trial court, on May 27, 1947, on each of the grounds specified in plaintiffs' notice of intention to move for a new trial. Said judgment was duly filed on the 13th day of June 1947. It is from such judgment, and the district court's order denying plaintiffs' motion for a new trial, that plaintiffs have appealed.

The learned trial judge, in his opinion, on pages 12 and 13 thereof (transcript on appeal, pp. 35, 36), stated:

"Having determined that Mrs. Nyberg was a guest and not a passenger, it is next necessary to ascertain whether gross negligence has been established. Plaintiffs have not attempted to plead gross negligence, the allegations of their amended complaint simply reading:

" 'That * * * the said Harriet Katherine Kirby negligently and carelessly drove and operated said automobile truck and failed to properly control the same, and caused and permitted the same to run off said highway and to overturn several times, thereby causing the injuries hereinafter described.'

"No evidence was offered in support of the alleged ordinary negligence on the part of Defendant, Harriet Katherine Kirby, Plaintiffs relying entirely upon the doctrine of res ipsa loquitur. In Shain on Res Ipsa Loquitur, Presumptions and Burden of Proof, the author states on page 23:

" 'If there is any subject in the vast realm of jurisprudence which holds more of boiling, bubbling confusion and chaos than the application of the res ipsa loquitur doctrine, it is its first cousin—presumptions.'

"Several authorities are cited in support of plaintiffs' contention that such doctrine is applicable to this case. Among others is the case of Groton v. Humphrey,

No. 63678, decided by this court on February 26, 1941, wherein, after a review of the authorities, it was held that the facts warranted the inference of negligence, and substantial damages were awarded the Plaintiff.

"It is doubtful whether the facts in the case at bar warrant such an inference and thus make applicable the doctrine of res ipsa loquitur, even though ordinary negligence only had to be established. However, it is neither necessary nor proper to decide this question, because the plaintiffs cannot recover in the absence of proof of gross negligence."

■■ If the trial court's conclusion and holding, as a matter of law, that the plaintiff, Ruth Nyberg, was a guest and not a passenger, was correct, then it clearly follows that that court's conclusion that the issue as to negligence was whether *gross* negligence, rather than merely *ordinary* negligence, had been proven, was correct; and, in view of the fact that plaintiffs offered no direct evidence of negligence, but, in lieu thereof, sought to invoke the doctrine, res ipsa loquitur, which, as the court well stated, citing ample authority, is applicable only in cases of ordinary negligence, and cannot be invoked to establish gross negligence or willful misconduct, the trial court was entirely right in holding that gross negligence had not been established. If, however, the learned trial judge was in error in his conclusion and holding that plaintiff, Ruth Nyberg, was, at the time of the accident, a guest and not a passenger, then it is equally clear that the issue as to the element of negligence would be whether or not ordinary, rather than gross, negligence had been sufficiently established. The trial court, taking the view that the learned Judge did take as to the question of "passenger or guest," was entirely correct in further stating that "it is neither necessary nor proper to decide this question," that is, the question of ordinary negligence, or whether or not the rule, or doctrine, res ipsa loquitur, should be applied, as contended for by plaintiffs, in the absence of any

direct evidence of negligence. But if the holding and conclusion that the plaintiff, Ruth Nyberg, was a guest and not a passenger was not correct, such holding is error as to a matter of law practically fundamental, and inevitably leading to an erroneous result, if the defendant, Harriet Katherine Kirby, was guilty of ordinary, rather than of gross, negligence. If plaintiff, Ruth Nyberg, was a passenger and not a guest, the court (quite naturally in consequence of that court's view) erroneously failed to pass upon the issue of ordinary negligence and the applicability of the rule, res ipsa loquitur, which, of course, if Mrs. Nyberg was a passenger and not a guest, would be the proper issue as to the element of negligence.

So, it is first incumbent upon us to determine, as best we may, the question whether the plaintiff, Ruth Nyberg, was a passenger or a guest in the automobile truck in which she was riding on July 8, 1944, and then being driven by defendant, Harriet Katherine Kirby, about twenty-eight miles from Elko, Nevada, just prior to and at the time same overturned, and Ruth Nyberg was injured.

The definition of "guest" in Nevada Compiled Laws Supp. 1931–1941, sec. 4439, above referred to, is as follows:

"For the purpose of this section the term 'guest' is hereby defined as being a person who accepts a ride in any vehicle without giving compensation therefor."

In the California case of Lerma v. Flores, 16 Cal. App.2d 128, 60 P.2d 546, on page 547, the appellate court (District Court of Appeals, First Dist.), in its opinion, in dealing with the question of sufficient compensation for transportation to clothe one riding in a vehicle, owned or operated by another, with the status of a passenger, stated:

"Whatever the rule where there is no express agreement to render services in return for transportation, which appears to have been the fact in the case cited,

where it is agreed that one of the parties shall be carried in consideration of the rendition of services of the kind here alleged, the benefit conferred was sufficient to support a contract of carriage, and was compensation excluding the passenger from the operation of section 141¾ of the California Vehicle Act (added by Stats. 1929, p. 1580, as amended by Stats.1931, p. 1693). The consideration may be any benefit conferred or any detriment suffered (Civ.Code, sec. 1605), and the law will not enter into an inquiry as to its adequacy. Whelan v. Swain, 132 Cal. 389, 64 P. 560; Rusconi v. California Fruit Exchange, 100 Cal.App. 750, 754, 281 P. 84; Seth v. Lew Hing, 125 Cal.App. 729, 14 P.2d 537, 15 P.2d 190; Marsh v. Lott, 8 Cal.App. 384, 389, 97 P. 163; Williston, Contracts (2d Ed.) sec. 115. Moreover, where the consideration agreed has been accepted the acceptance constitutes a waiver of any claim of inadequacy (Nicholson v. Tarpey, 70 Cal. 608, 12 P. 778) ; and the rule applies to the acceptance of services bargained for even though valueless in fact. Peters v. Binnard, 219 Cal. 141, 25 P.2d 834."

The facts of Lerma v. Flores, supra, from which we have just quoted, were as follows: the plaintiff therein employed the defendant to transport plaintiff's furniture, by motor truck, from San Lorenzo to Point Reyes, in Marin County, for a consideration of $20. It appears from the trial court's findings that "defendant invited plaintiff to ride upon said truck, and that plaintiff did ride thereon without paying a tangible consideration therefor, but partly for the accommodation and benefit of plaintiff and partly for the purpose of guiding the defendant along the highway and enabling defendant to pursue an economical and short course to his destination; and the court further finds that plaintiff did assist and guide defendant in said manner along the highway traversed until the accident, and that defendant stopped his truck several times along the route to obtain and did thereupon obtain directions from plaintiff." The court

concluded that plaintiff was a passenger and a business invitee of the defendant, and entered judgment against the latter.

The concluding paragraph of the appellate court's per curiam opinion is as follows:

"The facts bring the present case within the rule declared in the following decisions, namely: Crawford v. Foster, 110 Cal.App. 81, 293 P. 841; Sullivan v. Richardson, 119 Cal.App. 367, 6 P.2d 567; Woodman v. Hemet Union High School Dist., 136 Cal.App. 544, 29 P.2d 257; Riley v. Berkeley Motors, Inc., 1 Cal.App.2d 217, 36 P.2d 398; Haney v. Takakura, 2 Cal.App.2d 1, 37 p. 2d 170 [38 P.2d 160]; and the conclusion that the plaintiff was a passenger and not a guest is fairly supported.

"The judgment is affirmed."

A comparison of the facts in Lerma v. Flores, supra, with the facts in the instant case discloses that in the instant case the plaintiff, Ruth Nyberg, had no business whatever to cause her to take a trip to Elko on the 8th day of July 1944, and that the trip was of no benefit whatever to her. The transportation was merely incidental, to enable Mrs. Nyberg to carry out her promise, reluctantly given to defendant, John E. Kirby, at his instance, request and insistence that she would, in view of Mrs. Kirby's illness early that morning, accompany Mrs. Kirby on the trip to Elko. The reluctance on the part of Mrs. Nyberg to make the trip was because she was suffering from a severe case of sunburn, due to her having, in a bathing suit, done a washing the day before, in the sun. On the other hand, in Lerma v. Flores, supra, the plaintiff wished to go to Point Reyes, to which place his goods were being transported, and the defendant invited the plaintiff to go with him on the motor truck, partly for the purpose of directing the defendant as to the best route to be followed, and the plaintiff accepted the invitation. In that case, the

benefit and consideration was mutual, whilst in the instant case no benefit whatever passed to Mrs. Nyberg in compensation for making the trip and for the potential services which it was undoubtedly contemplated and intended by her and the Kirbys that she would render, should it become necessary, in assisting Mrs. Kirby on her business mission to Elko on behalf of the partners, and pertaining to the obtaining of supplies for the Wild Horse Ranch.

In the State of Washington, the law requires more, under the interpretation given their statute by the courts of that state, than is required by the California and Nevada courts, under the respective statutes of those states. Under the Washington statute, sec. 1, chap. 18, Laws of 1933, the word "payment," instead of "compensation," is employed, and the Supreme Court of that state has held that to constitute one a passenger, rather than a guest, "an actual or potential benefit in a *material or business sense* resulting or to result to the owner," is required. (Italics ours.) Fuller v. Tucker, 4 Wash.2d 426, 103 P.2d 1086, 1088. In Nevada, the word "compensation," and not the word "payment," is used in the statute, and we have no decision in which it has been held that such compensation for the transportation must be a benefit in a "material or business sense" conferred upon, or to result to, the owner or the operator of the automobile.

In this state the compensation, as in California, may be any tangible benefit conferred by the invitee upon the owner or operator of the motor vehicle.

It is clear that in the State of Washington, even though the benefit must be one "in a material or business sense," same may be *potential*, rather than *actual*, and may be a benefit which *actually results*, or, one which is *expected to result* to the owner or operator of the car, from the transportation of the invitee. This is made clear by the Washington decisions. In the case of Fuller

v. Tucker, supra, the Supreme Court of Washington, in its unanimous opinion by Mr. Justice Millard, stated, 4 Wash.2d 426, 103 P.2d on pages 1088, 1089.

"The question presented in the case at bar is foreclosed by our opinion in Syverson v. Berg, supra, [194 Wash. 86, 77 P.2d 382]. In that case we held that, to take a person riding with another out of the guest class—show 'payment for such transportation' (Sec. 1, Ch. 18, Laws of 1933)—two requirements are necessary: (1) an actual or *potential* benefit in a *material or business sense* resulting or to result to the owner, and (2) that the transportation be motivated by the expectation of such benefit." (Italics ours.)

Likewise in the State of California. In the case of Kruzie v. Sanders, Cal.App., 135 P.2d 710, on page 713 (to which we will have occasion to refer hereafter in more detail), it is stated:

"That the compensation to be given for the ride was small and that the services were not actually rendered because the accident rendered personal performance impossible cannot affect the issue."

At that point in his opinion, Mr. Justice Marks cited and quoted from the earlier opinion in Lerma v. Flores, supra, the portion thereof which we have hereinbefore embodied in this opinion, including the cases therein cited.

We see no reason, in view of the Washington and California authorities, why we should require more in Nevada, in construing the meaning of the word "compensation" as used in the definition of "guest" in our statute, N.C.L.1931–1941 Supp., sec. 4439, than is required in construing the meaning of the word "payment" in the Washington statute; nor why we should construe the word "compensation," in respect to whether or not same may be potential, more strictly than the words "benefits conferred" in the California statute (Cal.Civ.Code, sec. 1605) are construed by the courts of that state, in respect to the question of whether "the

benefits conferred" may be potential, as well as actual.

This question is rendered important in the instant case by reason of the fact that the defendants have emphasized the fact that the plaintiff, Ruth Nyberg, did very little, if anything, on the trip to Elko, Nevada, from the ranch, or while in Elko, to assist the defendant, Harriet Katherine Kirby, in carrying out her business mission to Elko, in pursuance of the business of the ranch and on behalf of the defendant partners. It is not clear from the testimony in the instant case precisely how much Mrs. Nyberg did to assist Mrs. Kirby while in Elko. That she accompanied Mrs. Kirby to the lumber dealer's office, or place of business, to place the order for lumber, tile, etc., and to the hardware store, and to the grocery store to purchase groceries, is undisputed. Just to what extent she participated in transacting the business at the grocery store, whether she assisted in selecting the groceries and the vegetables, or only the vegetables, and whether she actually carried a box of groceries, or of vegetables, to the automobile truck, or did not do so, does not appear clearly from the testimony. The Honorable District Judge in his opinion, on pages 2 and 3 (tr. pp. 25, 26), stated:

"Mrs. Nyberg voluntarily assisted in selecting the vegetables. The clerk put the groceries and vegetables in several boxes and carried the boxes to the truck."

And further on, upon said page 3 of the opinion (tr. p. 26), the following is stated (including a quoted excerpt from the testimony):

"Mrs. Nyberg bought nothing for her own personal use on the trip; and, aside from going to the two stores with Mrs. Kirby and voluntarily assisting in selecting the vegetables, she rendered no service to Mrs. Kirby. As the latter testified:

" 'Mr. Griswold: Q. Do you know of any assistance that Mrs. Nyberg gave you on this trip save and except the pleasure of her company with you going in and coming out? A. No, that was all, but it was a pleasure to

have her with me for company. That is an unpleasant trip by yourself.

" 'Q. Is it a long trip by yourself? A. Yes.

" 'Mr. Brown: Q. Did she do anything else after she got into town by way of assisting you to accomplish the purpose you went to town for? A. Not to my recollection, other than going to places with me.' "

On page 30 of the transcript on appeal, Mrs. Nyberg's testimony is, in part, as follows:

A. "We went in and selected the groceries ourselves, and we carried part of the groceries to the car."

  *  *  *  *  *  *  *

"Q. (By Mr. Griswold): You didn't carry any great big boxes of groceries and put them in the truck? A. Yes.

"Q. You carried out a great big box of groceries? A. Yes, I assisted."

In view of the fact that, in law, it is immaterial, in order to constitute the compensation making one a passenger, whether the compensation is actual or potential, it makes no appreciable difference, which we have been able to discern, how much or how little were the services *actually* rendered by Mrs. Nyberg to Mrs. Kirby, or, in effect, to the ranch partners, upon the occasion of, or in connection with, the trip made July 8, 1944, by Mrs. Nyberg to Elko, in company with Mrs. Kirby.

It is clearly sufficient, under the authorities above cited and considered in detail, and many more which could be cited, if the invitee making the trip *agrees,* either expressly *or impliedly, to render* compensation of value to, or *to confer* some tangible benefit upon, the operator or owner of the motor vehicle employed in the transportation. This may consist of services *actually* rendered, or *to be* rendered. If the parties so intend and agree, the services to be rendered may be *conditional.* This is well illustrated by the facts in the instant case. Mrs. Kirby had, on the early morning of July 8, 1944, been ill with cramps. Mr. Kirby visited the living quarters

of Mr. and Mrs. Nyberg, about six o'clock that morning, and requested some aspirin for Mrs. Kirby. He then inquired whether Mrs. Nyberg intended to make the trip to Elko with Mrs. Kirby that morning, which trip had been discussed at the dinner table the evening before. Mrs. Nyberg said, in effect, that she did not intend to go, but wished to remain at home, because of her severe sunburn. Mr. Kirby returned in about an hour, stating, in effect, that it was necessary that his wife make the trip to Elko to obtain the lumber, tile and other supplies for the ranch—that there was no one else available to go, and that because Mrs. Kirby was, or so recently had been, ill, he did not wish her to go alone. He urged Mrs. Nyberg to accompany his wife, and Mrs. Nyberg replied, in effect, that, under those circumstances, she would go. There is no conflict in the evidence on this point. Mr. Kirby's testimony alone was sufficient to establish it. He testified with honesty and frankness. The very nature of the transaction was one in which Mrs. Nyberg could expect no benefit from making the trip, but, because of the effects of her sunburn the previous day, she would undoubtedly suffer a real detriment—much inconvenience and doubtless some physical suffering, from riding, on a country road, upon a long journey of about sixty-two miles each way, in an auto truck.

■ The fact, alone, of Mrs. Nyberg accompanying Mrs. Kirby was, under the circumstances, a real, *actual benefit*, thereby conferred upon Mrs. Kirby, not primarily or principally because of the pleasure of having company on the trip, but fundamentally, and in the main, because it was unsafe, both for personal, humanitarian reasons and from the standpoint of business prudence, for Mrs. Kirby to make the trip alone. The humanitarian reasons, it is true, principally concerned Mr. and Mrs. Kirby, but indirectly they concerned also the partners, as no modern business institution, conducted according to humane standards, would wish a person recently ill to undertake entirely alone a long

trip over desert country largely devoid of human contact or habitation, requiring continuous driving of an automobile truck, and numerous business transactions in the purchase and transportation of supplies, without providing assistance to be utilized whenever and to the extent that subsequent events might render necessary.

The reasons, from the standpoint of business prudence, why it was expedient for Mr. Kirby, on behalf of himself and his partners, to provide assistance to Mrs. Kirby, for the purpose of the trip and the business to be transacted, are obvious. Should Mrs. Kirby suffer a recurrence of cramps in her stomach, so severe that she could not continue the journey, she would either be "stranded" upon the desert, or might fortunately succeed in reaching a haven in some ranch home, or perhaps experience rescue and transportation home by some kind passing motorist. In either of these events, the business mission to Elko would have been thwarted, or at least considerably delayed, and the ranch in the meantime left without the supplies which, from the testimony, it is clear the business undertakings of the ranch and the sustenance of its employees, imperatively required. So, both from the personal standpoint of Mr. and Mrs. Kirby, and the business standpoint of the ranch partners, including defendant, John E. Kirby, it was the wise and prudent course to make arrangements with Mrs. Nyberg to accompany Mrs. Kirby on the trip, and that is precisely what Mr. Kirby, as one of the partners and as agent for his copartners, did do.

In the circumstances, the *actual* benefit conferred by Mrs. Nyberg was in promising to make the trip, and in doing so. Social amenities and hospitality were only slightly or incidentally involved, as we view the matter, in the light of the surrounding circumstances. Neither of these women would have made the trip that day merely for pleasure or companionship, because Mrs. Kirby had so recently been ill, and no doubt would have much preferred to have remained at home, as would

Mrs. Nyberg, in order to "nurse" her sunburn. It was purely a business trip.

Mrs. Nyberg's husband was employed at the ranch, and she was residing there. This fact, the urgency of the circumstances and of Mr. Kirby's request, and Mrs. Nyberg's friendship for them, overcame her reluctance to go. It was implied and understood, doubtless, by both Mrs. Nyberg and by Mr. and Mrs. Kirby, that Mrs. Nyberg would render to Mrs. Kirby such assistance as subsequent events and circumstances thereafter indicated to be necessary. Such benefits or compensation, in addition to the making of the trip by Mrs. Nyberg, were *potential* benefits, in the nature of services to be rendered by Mrs. Nyberg, conditioned upon the happening of events or the existence of circumstances reasonably requiring their rendition. Under the law as we conceive it to be, after carefully studying many authorities, we consider it wholly immaterial that the services which were subsequently *actually* required were of slight value. Such conditional services, the rendition of which was undoubtedly contemplated, at the time the arrangement was made, as being dependent upon the presence or absence of future necessity, were potential, but the *assurance* that they would be rendered, if necessity called, was an *actual present benefit conferred* upon Mrs. Kirby and the partners, by the very fact that Mrs. Nyberg was making the trip prepared to assist whenever and to the extent reasonably required. The plaintiffs, according to the district court's opinion, relied very much, in that court, upon the reasoning in the California case of Kruzie v. Sanders, supra, and the Honorable District Judge, in his opinion, has, in distinguishing that case and the instant case, compared in detail the respective factual situations in the two cases. We will, therefore, now devote some attention to that case. In 135 P.2d on page 712, in the opinion by Mr. Justice Marks, it is stated:

"The present guest statute was first carefully considered in Crawford v. Foster, 110 Cal.App. 81, 293 P. 841, 842, where it was said: 'We think the meaning of the language used is that a guest is one who is invited, either directly or by implication, to enjoy the hospitality of a driver of a car; who accepts such hospitality; and who takes a ride either for his own pleasure or on his own business, without making any return to or conferring any benefit upon the driver of the car, other than the mere pleasure of his company. * * *'

"The foregoing definition is still approved by the courts of California and has been applied in many cases. Whether a person riding with the driver of the car is a guest as defined in the statute, or a passenger depends on the factual situation of each case. The conclusion to be drawn from the many cases dealing with the subject, in which the rider has been held to be a passenger and not a guest, may be stated, as applicable to the facts, here as follows: Where the trip is not solely for the pleasure of the parties and is not an exchange of social amenities, but is on the business of the driver in the prosecution of which the rider renders or is to render substantial assistance to the driver, a consideration flows from the rider to the driver which amounts to compensation for the ride and makes the rider a passenger and not a guest. See Walker v. Adamson, 9 Cal. 2d 287, 70 P.2d 914; Druzanich v. Criley, 19 Cal.2d 439, 122 P.2d 53; Haney v. Takakura, 2 Cal.App.2d 1, 37 P.2d 170, 38 P.2d 160; Boyson v. Porter, 10 Cal.App. 2d 431, 52 P.2d 582; Lerma v. Flores, 16 Cal.App.2d 128, 60 P.2d 546; Duclos v. Tashjian, 32 Cal.App.2d 444, 90 P.2d 140; Carey v. City of Oakland, 44 Cal. App. 2d 503, 112 P.2d 714; Bummer v. Liberty Laundry Co., 48 Cal.App.2d 648, 120 P.2d 672; Whittemore v. Lockheed Aircraft Corp., 51 Cal.App.2d 605, 125 P.2d 531.

"Here we find that Mrs. Kruzie had no business of her own to transact in Fresno; that making the trip

required readjustment in employment in the place where she worked; that she was reluctant to leave her work but finally yielded to the repeated and insistent urging of Mrs. Sanders and made the trip solely for the purpose of aiding Mrs. Sanders. It is evident that Mrs. Sanders regarded the presence of Mrs. Kruzie in Fresno as important to her,—so important that she postponed the trip until Mrs. Kruzie could go; that she wanted the advice and assistance of Mrs. Kruzie in selecting a setting for a ring which was to be a Christmas gift, as well as special information which Mrs. Kruzie possessed concerning other persons; that Mrs. Sanders desired to use this information in selecting presents for them."

It seems clear to us that, applying the elements, or factors, of the California "Guest" statute as stated in Crawford v. Foster, 110 Cal.App. 81, 293 P. 841, 842, to the facts in the instant case, Mrs. Nyberg, in the situation and under the circumstances which existed July 8, 1944, in relation to the trip from the Wild Horse Ranch to Elko could not properly be brought within the terms of the definition of a guest as thus stated in Crawford v. Foster, supra, had the accident in the instant case occurred in California. And, in principle, there is no appreciable difference between the meaning of the status of guest in our statute and that status under the California statute. Mrs. Nyberg was not invited, either directly or by implication, *"to enjoy the hospitality"* of a driver of a motor vehicle, neither did she *"accept such hospitality,"* in the sense intended by the definition. There was no thought of pleasure or sociability involved in connection with the trip to Elko, and the transportation, while, of course, essential to the trip, was purely incidental. The trip was one of necessity, as has been stated, and *was in no sense for Mrs. Nyberg's pleasure or upon her business, but was solely upon the business of the partnership.* And Mrs. Nyberg, as has been shown hereinbefore, *did, by her presence, in view of the*

*existing circumstances, confer a very substantial bene-*
*fit, other than the mere pleasure of her company, upon*
*the driver of the automobile truck.*

We shall now consider that portion of the opinion of
the learned trial judge wherein he distinguished and
differentiated Kruzie v. Sanders, supra, and the instant
case, as follows:

"The two cases are similar in that the parties had
been friends for some time. In no other respect is there
any similarity. In the cited case, Mrs. Sanders had for
nearly a week repeatedly urged Mrs. Kruzie to accom-
pany her on a trip from Coalinga to Fresno, because
she wanted Mrs. Kruzie's advice in the selection of a
ring for her husband and her help in choosing Christ-
mas presents for three girls who had formerly worked
at a cafe operated by the Kruzies. Although Mrs.
Kruzie had no special knowledge of the jewelry business,
she had good taste and she knew 'the sizes and different
things' appropriate as presents for the girls. Mrs.
Kruzie had already done her Christmas shopping and
she was making the trip solely for the purpose of assist-
ing Mrs. Sanders regarding the selection of presents and
carrying packages. Mrs. Sanders regarded the presence
of Mrs. Kruzie in Fresno so important to her that she
postponed the trip until Mrs. Kruzie could go.

"In that case, the trip was continued for nearly a
week until Mrs. Kruzie could go, while here there was
no continuance; there, the trip would not have been
taken without Mrs. Kruzie, while here Mrs. Kirby would
have taken the trip even though unaccompanied; there,
a special tangible benefit to the driver was the motivat-
ing influence for furnishing the transportation, while
here the transportation was intended and received as
a mere gratuity; there, it was agreed that Mrs. Kruzie
would confer a tangible or material benefit upon the
driver, while here there was no agreement that Mrs.
Nyberg would confer any benefit upon any person—not
even an incidental one; there, Mrs. Kruzie accompanied

the driver for the express purpose of assisting with her Christmas shopping, while here Mrs. Nyberg went along for no purpose other than to give the driver the mere pleasure of her company; there, Mrs. Kruzie accepted the ride solely for the purpose of performing a gratuitous service of a substantial nature for the driver, while here nothing more than the exchange of social amenities and reciprocal hospitalities were involved. It is clear that the two cases are not similar.

"Assuming, without deciding, that Mrs. Nyberg's status as a passenger was sufficiently alleged in the amended complaint, it is certain that such a status was not established by the evidence.

"In effect, the evidence shows that the trip would have been made regardless of whether Mrs. Nyberg had accepted the invitation to accompany the driver; that Mrs. Nyberg gave no cash or its equivalent for the transportation; that she was not requested, nor did she promise, to perform any service for, confer any benefit upon, or render any assistance to, the driver of the truck or her principal; and that she performed no such service, conferred no such benefit, and rendered no such assistance, other than to give the mere pleasure of her company and to voluntarily assist in selecting the vegetables."

The learned trial judge's statement to the effect that, in no respect other than that the parties had been friends for some time, is there any similarity in the two cases, we do not believe is justified by the undisputed facts. In all material respects the two cases are very similar as to the factual situation existing in each. The fact that in Kruzie v. Sanders, supra, Mrs. Sanders postponed the trip to Fresno to do her Christmas shopping until Mrs. Kruzie could go with her, and that there was no postponement of the trip in the instant case, is not material to show a greater degree of necessity for Mrs. Kruzie making the trip than existed as to Mrs. Nyberg in the instant case. The Kirby trip to Elko could not

be postponed, because of the urgency of obtaining the supplies for the ranch. The fact that it could not be postponed until Mrs. Nyberg recoverd from her sunburn added to her burden and the inconvenience which the trip caused her. She was required to go *then*, not at her convenience, as in the case of Mrs. Kruzie. The relative degree of necessity of the services of Mrs. Nyberg as compared to those of Mrs. Kruzie is readily and directly apparent from the nature of the respective purposes to be accomplished and the character of the services to be rendered in the respective cases, rather than indirectly from the fact that in Mrs. Kruzie's situation the circumstances permitted of postponement. In the instance of Mrs. Kruzie's trip to Fresno, the purpose was to assist Mrs. Sanders in selecting a setting for a ring, and also to assist her in selecting appropriate Christmas presents. The benefit to Mrs. Sanders was very desirable in an aesthetic sense, but was not a benefit required by actual necessity. In Mrs. Kirby's case, the presence of Mrs. Nyberg, the only person available for the trip, was absolutely necessary, from the standpoint of health, personal security and business prudence, in order that in the event Mrs. Kirby suffered a recurrence of her illness she would not be alone on the desert, with no one to care for her and attend to the business purposes of the trip.

In each of these cases, the woman accompanying the driver of the car did not make the trip either to serve any business purpose of her own or for her own pleasure, but for that of the owner or driver of the car. In the case of Mrs. Kruzie, however, the nature of her services was such as to afford pleasure and satisfaction to her in an aesthetic sense, as well as to Mrs. Sanders, and, because of that fact, it would be much more consistent, harmonious and reasonable to attempt to bring the same within the purview of mere social amenities or hospitality, than to attempt to so classify the service

of Mrs. Nyberg as to the trip to Elko. The grim necessity impelling Mrs. Nyberg's trip to Elko was, in no sense, aesthetic, under the circumstances; and the purpose of that trip, and Mrs. Nyberg's sunburned condition, relegated any social amenities or hospitality that might otherwise have been enjoyed, to a very insignificant role indeed. If Mrs. Kruzie was a passenger and not a guest under the facts and circumstances of Kruzie v. Sanders, supra (and the California court held that she was), a fortiori the facts and circumstances of the instant case abundantly justify the conclusion that Mrs. Nyberg was a passenger and not a guest.

We cannot discern that it is material whether or not Mrs. Sanders, in Kruzie v. Sanders, supra, or Mrs. Kirby in the instant case, would have taken the trip if unaccompanied. Mrs. Kirby testified she would have gone alone if Mrs. Nyberg had not accompanied her. Mr. Kirby was not so certain. He testified in that connection, "Yes, I think I would have asked her to go in." Regardless of whether Mrs. Kirby would have taken the risk of making the trip alone if Mrs. Nyberg had remained at home, it would have been most imprudent, at least, if not reckless and foolhardy, for her to have done so, under the then existing circumstances.

We have said enough to disclose that we disagree, also, with the above-quoted conclusions of the trial court relative to the status of Mrs. Nyberg in connection with the trip to Elko (as to whether she was a passenger or a guest), which we have not mentioned specifically. For instance, we feel impelled to disagree with the learned trial judge's conclusion that "there," (meaning in the case of Kruzie v. Sanders, supra,) "a special tangible benefit to the driver was the motivating influence for furnishing the transportation, while here the transportation was a mere gratuity." According to the learned Judge's reasoning, the act of Mrs. Kruzie and her promise to assist Mrs. Sanders in selecting a setting for a

ring, and in the selection of certain Christmas presents, was a special tangible benefit to Mrs. Sanders, and was the motivating influence for furnishing the transportation, whilst the act of Mrs. Nyberg in subjecting herself to the annoyance of such a trip as the one to Elko when she was suffering from severe, and doubtless painful, sunburn, and solely for the purpose of supplying the need of Mrs. Kirby that Mrs. Nyberg accompany her to care for her and assist her to the extent necessary to successfully complete the trip, was no benefit at all, and amounted to not even enough consideration or compensation to compensate for the transportation (insignificant and incidental in comparison, as we view the matter), but was a mere gratuity.

That conclusion of the trial court, like the others of similar import which follow it, in the learned trial judge's opinion and decision, is not in accordance with the facts as proven by the evidence. Such erroneous conclusions of fact evidently led to the legal determination, or conclusion of law, that the plaintiff, Ruth Nyberg, when she was injured on the evening of July 8, 1944, as the result of the automobile accident which then occurred, was a guest and not a passenger. This legal determination, or conclusion of law, was, in our view, erroneous and unjustified, from both the standpoint of the evidence adduced at the trial, and the applicable law, properly construed.

In addition to the authorities hereinbefore cited, we cite the following as pertinent to the various phases of the subject of the comparative status of "guest" and "passenger:" Druzanich v. Criley, 19 Cal.2d 439, 122 P.2d 53; Fiske et al. v. Wilkie, 67 Cal.App.2d 440, 154 P.2d 725; Huebotter v. Follett, Cal.App., 161 P.2d 481; Melcher v. Adams, 174 Or. 75, 146 P.2d 354; Elliot v. Behner, 146 Kan. 827, 73 P.2d 1116; Van Auker v. Steckley's Hybrid Seed Corn Co., 143 Neb. 24, 8 N.W.2d 451.

■■ As has been, in effect, already stated, the plaintiffs, predicating their contention upon the theory that the plaintiff, Ruth Nyberg, was a passenger and not a guest, insisted in the lower court that, in the absence of any direct evidence as to what actually caused the automobile truck to swerve, get out of control, leave the road and overturn, or how same happened, the rule res ipsa loquitur, should be applied. The lower court, as hereinbefore stated, having reached the conclusion that Mrs. Nyberg, at the time of the accident, was a guest and not a passenger, rightly concluded that, upon that basis, the issue as to negligence would be gross negligence, rather than ordinary negligence, and that inasmuch as the res ipsa loquitur rule (if an appropriate factual situation existed otherwise for its application) is applicable only to supply an inference, or presumption, of *ordinary* negligence, and never of *gross* negligence, declined to decide, or make any findings, as to the applicability of res ipsa loquitur. This court, however, has reached the opposite conclusion upon the issue of passenger or guest, and, therefore, it follows that the negligence issue is consequently determined to be ordinary negligence, and not gross negligence. Ordinarily, the lower court having made no actual determination upon the question of whether or not the res ipsa loquitur rule, or doctrine, is applicable (as contended for by plaintiffs), we would, in remanding the case, request such determination by the lower court, this court being one entirely of appellate, and not of original, jurisdiction. There are two reasons, however, why we feel impelled to do otherwise, and ourselves to determine the issue:

1. No new trial being necessary, and the material facts being fully developed and undisputed, the issue is one of law and not of fact, and we believe the weight of authority indicates that it is our duty to make such determination in the first instance, and contribute toward the early conclusion of the litigation, in view of the fact that such

issue is practically determinative of the outcome of the case, and should we fail to determine same, a further appeal would be virtually inevitable. 5 C.J.S., Appeal and Error, sec. 1925; 3 Am.Jur., sec. 1203, pp. 706, 707, and, particularly, the numerous cases cited in footnote 4; also, sec. 1208, pp. 710, 711.

2. It is absolutely essential, before this court can properly reach a final determination of this appeal, that the issue of ordinary negligence be determined, and this can be properly done only by deciding whether the rule, res ipsa loquitur, is applicable, there being no direct evidence of negligence, and plaintiffs having invoked such rule. The conclusion we have reached that, as a matter of law, under the established facts the plaintiff, Ruth Nyberg, was a passenger and not a guest, does not standing alone, entitle plaintiffs to judgment. To so entitle plaintiffs to judgment, the defendant, Harriet Katherine Kirby, must have breached her duty of ordinary care, and been guilty of ordinary negligence. If she was not so negligent, or until her ordinary negligence is established, the judgment for defendants could not properly be disturbed, even though reached upon the wrong theory that Mrs. Nyberg was a guest and that Mrs. Kirby was not guilty of *gross* negligence. It is well settled that "a decision right in result will not be reversed even though the reason stated for it is wrong." This quotation is from 3 Am.Jur., sec. 1008, p. 563. See, also, cases cited in footnote 20. Apparently the attorneys for both sides of the case entertain the view that this court should determine the question, as they have extensively and ably briefed same. So, in order to reach as best we may a correct determination of this appeal as to whether there should be an affirmance or reversal, we must first determine the issue whether there was ordinary negligence on the part of Mrs. Kirby at the time of, or just prior to, the accident, and whether or not in connection with the determination of that issue, the facts and circumstances are such as to justify the

application of the rule, res ipsa loquitur.

The writer of this opinion has found both an informative and enlightening treatment of this subject in the textbook entitled, "Res Ipsa Loquitur, Presumptions and Burden of Proof" (1945), by Mark Shain, LL.M., a distinguished member of the Massachusetts Bar. The learned district judge, in his opinion and decision (page 36 of the transcript on appeal) has cited and quoted from page 23 of said textbook. Mr. Shain, on page 1, of Part I, in stating the thesis of his valuable book, defines the doctrine of res ipsa loquitur as follows:

"The doctrine of Res Ipsa Loquitur is this:

"When a thing which causes injury, without fault of the injured person, is shown to be under the exclusive control of the defendant, and the injury is such as, in the ordinary course of things, does not occur if the one having such control uses proper care, then the injury arose from the defendant's want of care."

The learned author, on page 2, has stated:

"The phrase Res Ipsa Loquitur means 'the thing itself speaks.' It will help to clarify the doctrine and to facilitate its discussion if we put the following questions:

"1. *What* is the 'thing' which speaks?

"2. *Where* does the 'thing' speak?

"3. *When* does the 'thing' speak?

"4. *Why* does the 'thing' speak?

"5. *For whom* does the 'thing' speak?

"6. *To whom* does the 'thing' speak?

"7. *What* does the 'thing' say?

"The answers to the foregoing questions can be found in an analysis of the clear facts in the case of San Juan Light and Transit Company v. Requena, 1912, 224 U.S. 89, 32 S.Ct. 399, 56 L.Ed. 680."

Mr. Shain, on page 85 of said book, has referred to the application of the doctrine as early as 1616, in the English case of Roberts v. Trenayne, decided in that year, and reported in Cro.Jac. 507, 79 Eng.Rep. 433.

In that case (quoting Mr. Shain, from p. 85) "it was held that corrupt intent was implied, because 'res ipsa loquitur' the agreement in question, itself, provided for usurious interest."

Mr. Shain, on page 20 of Shain on Res Ipsa Loquitur, Presumptions and Burden of Proof, has stated:

"2. Definition of the Term 'Res Ipsa Loquitur.'

"The term 'Substantive Law,' has just been defined. To determine whether 'Res Ipsa Loquitur' is Substantive Law, it is essential that our attention be next focused upon the definition and nature of the doctrine and principle res ipsa loquitur and the rule or presumption employed in its application.

"Chief Justice Erle's statement in the famous case of Scott v. The London and St. Katherine Docks Company (3 H. & C. 596, 13 W.R. 410, 11 Jur. (N.S.) 204, 34 L.J. Exch. 220, 13 L.T. 148, 159 Eng.Rep. 665 (1865)), has been universally accepted as an accurate definition of the doctrine from which the rule results. It will bear emphasis. This is the language:

" 'There must be reasonable evidence of negligence.

" 'But where the thing is shewn to be under the management of the defendant or his servants, and the accident is such as in the ordinary course of things does not happen if those who have the management use proper care, it affords reasonable evidence, in the absence of explanation by the defendants, that the accident arose from want of care.'

"The plaintiff's proof and the application of the doctrine in that particular case resulted in certain facts having been established, absent an explanation by the defendant:

"(1) That the defendant had control of the barrel of flour and the premises when the accident happened;

"(2) That the barrel fell upon the plaintiff while he was on the public sidewalk;

"(3) That it injured the plaintiff;

"(4) That the defendant negligently permitted the barrel to fall and injure the plaintiff.

"It will be observed that the doctrine creates a presumption. The plaintiff produced no evidence of negligence upon the part of anyone. The accident and the injury were proved, and also the surrounding circumstances, and negligence of the defendant was presumed by the court, as a matter of law, as it took *judicial notice* that, in the ordinary course of things, such an accident does not happen if the party in control of the instrumentality which caused the injury had taken due care to prevent it.

"Thus the doctrine res ipsa loquitur is given practical effect as an arm of the judicial function to award justice to whom justice is due, and this is accomplished through a presumption.

"Therefore, the course of our study and inquiry into the nature of the doctrine requires that attention be focused on its effect as a presumption."

■ In the instant case, the evidence established the fact that just prior to, and at the time of the accident, the automobile truck was being driven by the defendant, Harriet Katherine Kirby, on a straight, level road (after passing the Dinner Station) ; that it was daylight, there was nothing obstructing her vision, that no automobile or other vehicle was near or approaching at the time, that there were some "chuck holes" or "bumps" in the road, as is usual in many such roads, but that the road was a "pretty good" country road. She knew, generally, that such "chuck holes" or "bumps" existed. Mrs. Nyberg testified that Mrs. Kirby was traveling about fifty miles an hour, which testimony was uncontradicted. Mrs. Kirby testified she did not know what caused the truck to go off the road. Her testimony as to that fact was as follows:

"A. It was a pretty good road for a country road. I mean it had chuck holes, but not more than any other road."

72

"Q. You had driven the road before? A. Yes.

"Q. Many times? A. Yes, many times.

"Q. At the time, and immediately before the accident, is there anything you can tell this Court as to what happened? A. No, there is not.

"Q. Do you know what caused the truck to go off the road? A. No, I do not know.

"Q. Did you try to keep it from going off the road? A. Certainly.

"Q. When it hit the shoulder, did you try to get it back on the road? A. Naturally, that is my first instinct.

"Q. What happened then? A. I went over.

"Q. Were you knocked unconscious? A. No.

"Q. Were you injured? A. Quite badly injured. I had a fractured shoulder and pelvis and ankle and a couple of scratches and bruises.

"Q. Was Mrs. Nyberg thrown out of the truck. A. I know she was in the truck, or close to the truck.

"Q. You could not see her? A. No.

"Q. You and Mrs. Nyberg were the only two in the truck who were there at that time? A. That is right.

"Q. Any traffic coming toward you? A. No.

"Q. Anybody following you? A. No." (Tr. on appeal, pp. 139, 140.)

Mrs. Nyberg testified, in substance, that she felt a "bump," struck her head on the side of the car, and was rendered unconscious. She, too, did not know what caused Mrs. Kirby to lose control of the car and/or the car to swerve off the road and overturn, causing the injuries to Mrs. Nyberg, and the injuries to Mrs. Kirby, who, also, was injured.

It may be surmised, and even inferred, from the circumstances, that Mrs. Kirby was negligent, for the reason that she was traveling fifty miles an hour, even though she knew there were "chuck holes" in the road. Traveling at such speed obviously curtailed her opportunity to see such "chuck holes" in sufficient time before contacting them to enable her to lessen the speed of the

car and to approach them cautiously and easily, instead of violently. With such opportunity lessened because of the speed, and bearing in mind that Mrs. Nyberg testified she felt a "bump," just before her head struck the side of the car, it becomes probable, from these circumstances, that the car hit one of the "chuck holes" without Mrs. Kirby having discerned it before such contact, that the contact was, therefore, violent, and that the effect of same was to cause the front wheels of the automobile truck to swerve suddenly and with sufficient force to cause Mrs. Kirby to lose control thereof. The existence of these circumstances of fact establishes a reasonable basis for the factual inference of negligence. But such evidence alone will justify a mere "evidential" inference to support such theory, and by no means establishes same. Indeed, the "bump" and loss of control of the car may have been caused by running over some obstruction recently placed in the road, of the presence of which Mrs. Kirby had no information (as she did of the "chuck holes"), such as would enable her to anticipate same; or the "bump" and loss of control could have been caused by a tire "blowing out," a breaking of some mechanical part of the car, or other unavoidable cause, for which Mrs. Kirby would not be responsible. It is clear that the plaintiff, Mrs. Nyberg, in her situation at the time of the accident, had not the same means of knowing what caused the "bump," as did Mrs. Kirby, who was driving and in a better position, from what in common parlance is known as "the feel of the car," and the watchfulness which devolves upon the driver, to judge what sort of interference happened which was of sufficient force and effect to wrest control of the car from her. If the cause was the "blowing out" of a tire, or some mechanical failure, the owners of the car (the defendant partners), would probably have had a much better opportunity to have learned of it subsequently, when they removed the car, or had it removed, than would Mrs. Nyberg, who, because of her injuries, was

soon removed from, and did not revisit the scene of the accident. The facts and circumstances clearly indicate that the rule, or doctrine, res ipsa loquitur, should be applied in the instant case, so that the duty of "explanation" as to the cause of the accident would devolve upon those in the better position to know, or determine, such cause. The factual situation in the instant case comes squarely within the definition, hereinbefore quoted, of such rule, or doctrine. The thing which caused the injury, namely, the automobile truck, without fault of the injured (Mrs. Nyberg), was under the exclusive control of the defendant, Harriet Katherine Kirby, and the injury was such as, in the ordinary course of things, does not occur, if the one having such control uses proper care; then (res ipsa loquitur) the injury arose from the defendants' want of care.

In other words, the doctrine, res ipsa loquitur, operates, under the facts and the circumstances in the instant case, to supply a presumption, or at least an inference, of negligence, which must be sufficiently rebutted, or at least overcome, by substantial evidence, before defendants would be entitled to prevail. Mr. Shain, as the result of his exhaustive research, in tracing, historically, the doctrine and its development, from its first appearance in the common law of England, early in the Seventeenth Century, until the publication of his book in 1945, has reached certain definite conclusions, which appear justified by the vast collection of authorities, both English and American, which he has cited. He has, it is believed, quite clearly established that under all the English authorities, both early and modern, and numerous authorities in the United States, the application of the res ipsa loquitur doctrine means that, given the requisite basis of facts, a pure presumption of negligence arises, which is a rule of substantive law, and not merely a procedural rule, or rule of evidence; that, like any other rebuttable *presumption,* as distinguished from a mere *inference or rule of evidence,* it is sufficient,

added to the other evidence for plaintiff, to completely establish a prima facie case on behalf of plaintiff, resulting in the shifting of the burden of proof to the defendant, and which can be rebutted by defendant by nothing less than a preponderance of the evidence proving that defendant was not negligent.

Much confusion and conflict exists in the later cases in the United States, due, Mr. Shain is convinced, to the acceptance, by many courts, of what he designates as the "Thayer-Wigmore dogma" that "the burden of proof never shifts," and Professor Wigmore's phrases, "the burden of going forward," and the "risk of nonpersuasion," which lead to the conclusion that the rule, res ipsa loquitur, is a mere rule of evidence or procedure, or, in other words, a rule of adjective, rather than substantive, law, resulting merely in an evidential inference, which does not operate to cause any shifting of the burden of proof, and which, although it must be rebutted or overcome, may be so dissipated by any substantial contradictory evidence deemed sufficient to disprove it, or at least of sufficient weight to create a state of evidential equilibrium.

(The above Thayer-Wigmore reference by Mr. Shain is to the very distinguished Professor Thayer, formerly Professor of Law at Harvard University, and the late Professor John H. Wigmore, of Northwestern University, eminent authority on the law of evidence, and author of "Wigmore on Evidence.")

Mr. Shain bitterly assails the opinion of Mr. Justice Pitney, and the result of the decision by the United States Supreme Court in Sweeney v. Erving, 1913, 228 U.S. 233, 33 S.Ct. 416, 418, 57 L.Ed. 815, Ann.Cas. 1914D, 905. At one point, Mr. Shain, on pages 182–188, in referring to the many cases following the Thayer and Wigmore theories, stated:

"These decisions almost invariably quote others of the same type—especially Sweeney v. Erving, which exhibits no indication that Mr. Justice Pitney, who wrote the

opinion, had ever heard of any of the English decisions which have been quoted in this chapter; yet he dogmatically asserts:

" 'In our opinion, res ipsa loquitur means that the facts of the occurrence warrant the inference of negligence, not that they compel such an inference.' "

■ While I am frank to state that, in view of his vast research and able presentation, I find Mr. Shain's reasoning very persuasive, and his conclusions well founded and reasonably reached, it is unnecessary, in order to reach the proper result in the instant case, to adopt either of the two conflicting conceptions. The result in the instant case would be the same, whichever theory is followed, for the reason that no explanation whatever as to the cause of Mrs. Kirby losing control of the automobile truck, and/or of its swerving and overturning, resulting in the injuries suffered by Mrs. Nyberg, was offered by the defendants. So, if the theory most favorable to defendants, namely, that the doctrine res ipsa loquitur means that a mere inference of negligence arises, and not a presumption causing the shifting of the burden of proof, be followed, yet, under such theory, applied in the instant case and in the absence of any evidence on behalf of defendants to disprove or overcome such inference, the plaintiffs are clearly entitled to judgment.

Ales v. Ryan, 8 Cal.2d 82–99, 64 P.2d 409, 417, is a leading California case which follows the "rule of evidence," or "mere inference," theory, as distinguished from the "pure presumption," or "rule of substantive law," conception. Under that theory, the application of the res ipsa loquitur rule to the situation in the instant case, in which there is an entire absence of evidence, or "explanation," to meet or overcome the inference of negligence, or the prima facie case resulting therefrom, can lead to no result other than judgment for the plaintiffs. The opinion in that case is, in part, as follows:

"The rule is well settled by a multitude of decisions of

the appellate courts of this state to the effect that the inference of negligence which is created by the rule res ipsa loquitur is in itself evidence which may not be disregarded by the jury and which in the absence of any other evidence as to negligence, necessitates a verdict in favor of the plaintiff. It is incumbent on the defendant to rebut the prima facie case so created by showing that he used the care required of him under the circumstances. The burden is cast upon the defendant to meet or overcome the prima facie case made against him."

See, also: Druzanich v. Criley, supra, and the many cases cited on the subject, 19 Cal.2d 439, 122 P.2d 53, on page 56; Kruzie v. Sanders, supra; Fiske v. Wilkie, supra.

We quote the following portion of the opinion in Fiske v. Wilkie, supra, by Mr. Justice White, 67 Cal.App.2d 440, 154 P.2d on page 731:

"Experience has taught that certain kinds of automobile accidents rarely happen without negligence on the part of the driver; that in many, if not most, of such accidents, the driver alone knows just what happened; and, for that reason, if the driver can not or will not explain the cause of the accident, those injured in the accident, in order to enforce their remedy, are entitled to the presumption of the driver's negligence arising under the doctrine of res ipsa loquitur upon proof that the accident occurred while the automobile was under the exclusive control of defendant."

From the foregoing it follows that, in our view, the plaintiffs are entitled to judgment. This necessitates reversal, and remanding the case to the district court to determine and render judgment in favor of the plaintiffs and against the defendants for such amount of actual damages as Mrs. Nyberg has suffered, and will continue to suffer, by reason of her injuries, which were the proximate result of the negligence of defendant, Harriet Katherine Kirby, it having been sufficiently established from the evidence, together with the application of the

res ipsa loquitur doctrine, that such negligence of said defendant, Harriet Katherine Kirby, was the proximate cause of the accident which occurred about 28 miles from Elko, Nevada, on July 8, 1944, in that the automobile truck being then and there driven by the said defendant, Harriet Katherine Kirby, left the road and overturned, causing said injuries to the plaintiff, Ruth Nyberg.

It is the decision of this court that the judgment of the trial court be, and the same is hereby reversed, and the cause remanded; that the trial court shall, at its convenience, provide for such additional proceedings as may be necessary to enable that court properly to determine, in accordance with the evidence and the legal principles properly applicable, the damages which should be awarded the plaintiffs, to reasonably, fairly and justly compensate for the injuries suffered by plaintiff, Ruth Nyberg, as the proximate result of such automobile accident; and that the said trial court, upon determining, finding and adjudging the amount of such damages, shall render judgment in favor of the plaintiffs for such amount of damages thus ascertained, found and adjudged to be due, and for their costs and legal disbursements.

BADT, J., concurs.

EATHER, C. J, heard the arguments in the above-entitled case, but, because of illness, did not participate in the preparation or rendition of the foregoing opinion.

## ON PETITION FOR REHEARING

May 26, 1948.                                           193 P.2d 850.

For former opinion, see 65 Nev. 42, 188 P.2d 1006.

*Morgan, Brown & Wells,* of Reno, for Appellants.

*Morley Griswold and George L. Vargas,* both of Reno, for Respondents.

*Per Curiam:*

The court has carefully considered the very well-prepared and exhaustive petition of respondents for a rehearing, also the reply of appellants thereto, and the legal questions involved.

After such careful consideration and a review of our opinion, we are constrained to conclude that, in reaching the result we did in the opinion, we determined only questions of law, and did not add to, alter or modify in any manner the lower court's findings of fact. Indeed, the facts, to the extent known to the respective parties, were fully developed upon the trial, and have not been disputed in any important particular. We see no reason to change our holding that the doctrine of res ipsa loquitur was properly applicable, in view of the facts proven, to create a presumption or inference of negligence, which, in the absence of explanation by the respondents, necessarily, as a matter of law, required judgment for the plaintiffs (appellants). As expressed, in effect, in the opinion (65 Nev. 42, 188 P.2d 1006), the legal question of res ipsa loquitur was fully briefed, and we thought when the opinion was rendered, and still believe, that no good purpose would be served by

remanding the case to the District Court for the determination of matters of law, which, it is reasonable to believe, would have to be ultimately determined by this court. To do so, it seems to us, would be unnecessarily prolonging the litigation, and adding to its expense to the parties. Consequently, a rehearing is denied.