[Civ. No. 14269.  Second Dist., Div. One.  Jan. 2, 1945.]

VIRGINIA FISKE et al., Appellants, v. CORA WILKIE, Respondent.

Ratzer & Bridge and Collamer A. Bridge for Appellants.

Michael F. Shannon, Thomas A. Wood and Charles W. Wolfe for Respondent.

WHITE, J.—This is an attempted appeal from an order "sustaining the demurrer of defendant to the evidence," an order granting motion for nonsuit, and an appeal from a judgment of the Superior Court of Los Angeles County.

The amended complaint sets out two causes of action and prays for general and special damage occasioned by the death of Mrs. Clara Riis Fiske resulting from injuries received by her: (1) while "riding as a passenger for hire" in an automobile owned by defendant and operated by the latter in a "careless, reckless and negligent manner"; and (2) while "riding as a guest" in said automobile when a "collision of said automobile with said tree was caused by the willful misconduct of the defendant in that she willfully, intentionally, wantonly and recklessly caused the said automobile to crash with said tree."

At the trial, plaintiffs introduced evidence that they are the daughters and only heirs of said Clara Riis Fiske, deceased, and that William C. Fiske, their father and the husband of decedent, died in August, 1941, several months after the death of their mother.

Counsel for defendant then objected to the introduction of any other evidence upon the ground that it was incompetent, irrelevant and immaterial, and in support of such objection stated:

". . . their only right to maintain an action here is pursuant to Section 377 Code of Civil Procedure as the heirs at law of the person alleged to have been wrongfully killed. If the father was alive as of the date of the death the cause of action resided in the father, not in the children, and therefore the only one who would have the right on the father's death to file an action would be the personal representative of the father, if that action survived him. . . . If the wife died without a will, and there is no allegation of a will here, then . . . so far as the right of action is concerned or so far as the community property is concerned, the children take

nothing. . . . Section 377 vests this cause of action in either the heir or heirs of the deceased person, or in the personal representative. . . .'' The court thereupon said: ''At present I am going to overrule the objection. If there is any further question we can look it up at a later period.'' He then read section 377 into the record and said: ''I think I will proceed under that to take the testimony,'' which he did. When plaintiff rested, defendant moved for a nonsuit in each cause of action. The court took the case under submission. Thereafter, the following minute order was made April 19th and entered April 21st:

''Cause heretofore heard and submitted on April 14, 1943, it is now ordered: The Demurrer to the evidence is sustained and Defendant's Motion for a nonsuit is granted.'' Judgment for defendant, entered May 28, 1943, reads in part as follows:

''. . . upon the commencement of introduction of testimony on the part of the plaintiff, defendant demurred to such evidence and objected to the introduction of any further evidence on the part of plaintiffs when it appeared that the husband of decedent and father *or* plaintiffs herein died a few months after the death of the wife and mother, ruling upon which demurrer and objection was reserved by the court; . . . all of the foregoing matters were taken under submission by the court and said court on the 19th day of April, 1943, filed its opinion in writing in the above entitled action, sustaining the demurrer of defendant to the evidence of plaintiffs and granting defendant's motion for a nonsuit; wherefore, by reason of the foregoing matters,

''It Is Ordered, Adjudged and Decreed that plaintiff take nothing. . . .''

We assume, as did both appellants and respondent in their respective briefs herein, that the trial court meant, by its minute order sustaining the ''demurrer to the evidence,'' which is hereinabove quoted, that the objection to the introduction of further evidence urged by defendant for the reason that plaintiffs were not ''heirs'' authorized to bring the action under section 377 of the Code of Civil Procedure was sustained.

It then becomes apparent that the trial judge, when determining defendant's motion for nonsuit, considered only that portion of the evidence introduced before the making

of said objection. If that objection should not have been sustained, appellants have been erroneously deprived of their right to a trial. ■ The ruling on the objection to the evidence will be reviewed on the appeal from the judgment.

■ Section 377 of the Code of Civil Procedure provides:

"When the death of a person . . . is caused by the wrongful act or neglect of another, his heirs . . . may maintain an action for damages against the person causing the death. . . ."

The word "heirs" refers to "those who would be entitled to succeed to the property of such person. . . ." (Prob. Code, § 108.) Who is "entitled to succeed" to a particular property depends upon the nature of the property,—that is, whether it was separate or community property (Prob. Code, § 201; Prob. Code, § 221). The law of this state has long been settled that damages recoverable in an action such as this "are not the product of the community effort or of community accumulations. . . ." (*Redfield* v. *Oakland C. S. Ry. Co.*, 110 Cal. 277, 289-290 [42 P. 822, 1063].) As decided in that case, the word "heirs" in section 377 is "intended to limit the right of recovery to a class of persons who, because of their relation to the deceased, are supposed to be injured by her death." Such a claim for damages is not for injuries inflicted upon the decedent, but "for the injury inflicted upon the plaintiffs personally." (*Redfield* v. *Oakland C. S. Ry. Co.*, supra, 290; *Blackwell* v. *American Film Co.*, 189 Cal. 689, 694 [209 P. 999]; *Estate of Riccomi*, 185 Cal. 458, 460 [197 P. 97, 14 A.L.R. 509].) Consequently, recovery is not limited to persons who would succeed to the money so recoverable if it had been in the possession of the community at the time of her death, but such recovery may be had by those persons who are capable of inheriting from the deceased person generally. (*Redfield* v. *Oakland C. S. Ry. Co.*, supra.) A decedent's separate property where there is a surviving spouse and more than one living child "goes one-third to the surviving spouse and the remainder in equal shares" to the children, all of whom are therefore "heirs" of the decedent (Prob. Code, § 221; Prob. Code, § 108). The fact that the husband of decedent survived her by a few months has no effect whatever upon the right of her children, the plaintiffs and appellants herein, to recover for the damages inflicted upon them by reason of their mother's death. (*Taylor* v. *Western Pacific R. R. Co.*, 45 Cal.323, 335-336.)

In view of the authorities hereinbefore discussed, the ruling of the court sustaining the objection of defendant to the introduction of evidence by plaintiffs was erroneous.

Respondent urges, however, that, even if error was committed, it could not have been prejudicial to appellants for the reason that all of the evidence offered by them was insufficient to prove either of the causes of action pleaded in the amended complaint and a nonsuit should have been granted in any event.

This is not a case where the trial court has considered the evidence and found in favor of defendant. Here, the trial court erroneously decided the evidence could not be considered. Appellants are entitled to have such evidence heard and weighed by a jury or trial court, if, under any possible view of all the evidence offered by them, they might have recovered.

It, therefore, becomes necessary for us to examine the entire record, considering it in the light most favorable to appellants. Following is a summary of the facts disclosed.

On the morning of April 23, 1941, Clara Riis Fiske (plaintiffs' mother) and five other women left Hermosa Beach in an automobile owned and operated by defendant. They proceeded to Palm Springs and Idyllwild in Riverside County. On their return trip that evening and while said car was being operated by defendant, it crashed into a tree, injuring all the occupants of the car. Two days later, Mrs. Fiske died as a result of the injuries received by her.

Defendant testified that she and Mrs. Fiske and the four other occupants of her automobile were members of South Bay Garden Club, the object and purpose of which was the study and growth of victory gardens, flowers, trees and shrubs; and that on the trip the other ladies picked some specimens of plants and ". . . we generally bring home a few specimens, just when we have our next Garden Club party that we can show what we did on our little trip. I often made these trips." The president of the club had arranged with defendant to permit her (the president) to drive defendant's car on the contemplated trip and then, because of the death of a member, had decided she could not go, so defendant said to the president "Well, we will just call it off then." Mrs. McKay (one of the other occupants of defendant's car) "got up the crowd" and defendant "didn't know who was

going." After defendant had told the president to "call it off," Mrs. McKay came to defendant's house and persuaded her to go and drive her car. When asked if she had "any conversation about the expense and purpose" of the trip, defendant answered "Nothing particular about this one, but it is understood with the Garden Club when we take these trips, that we are to leave as much gas in the car as when we start out with it." Defendant further testified that gas was put in the car at Banning; that she did not pay for it; and that she does not know who did pay for it; and said "Well, I imagine they filled it up, I didn't pay no attention, it didn't make no difference to me, because I was to have seven gallons of gas at home."

Deputy Sheriff Kelly, who arrived at the scene of the accident about ten minutes after the crash, testified that he found the "right front just at the axis of the hood and the windshield" of defendant's 1940 Chevrolet sedan against the south side of a eucalyptus tree. Apparently the right front portion of the automobile had been damaged and bark had been knocked off the tree by the impact. Defendant was sitting up near the wrecked car, three women were "laid out on the grass" and two others were jammed in the front seat so that the back thereof had to be pried away to get them out. The tree with which the automobile had collided was approximately two feet in diameter, located at the edge of a private driveway, the first of a row of such trees in front of a house, and about fifteen feet south of the southerly edge of the pavement. Skid marks led from the rear wheels of the automobile in a wide, gradual arc to the north side of the pavement and back to a spot about five feet south of the center line and 150 feet northeast of said car.

The place of the collision was just south of the southerly edge of Center Street, east of its intersection with Bloomfield Avenue. Center Street at that point runs east and west between Norwalk and Artesia, without a turn or curve. There was no obstruction or defect in the pavement, which was level, dry and twenty-two feet wide, with a four-inch solid white line through its center. On each side of the pavement was a four-foot graveled strip. The ground sloped a little from the edge of the pavement to the tree with which the automobile collided. The evening was clear, the automobile lights were on, and there was no indication that any other vehicle had been near defendant's automobile at the time of the accident.

Deputy Sheriff Kelly testified that defendant was the only occupant of the car who was able to talk when he arrived there, and that she appeared to be "quite nervous."

Defendant testified that she had been driving in a westerly direction; that there was no other car on the road; that her car was running perfectly; that she was in good health and felt fine; that she did not know what caused the car to go off the road on the left side and collide with the tree.

It is contended by respondent that the evidence, as a matter of law, fails to prove two essentials of appellant's first cause of action, to wit: (1) that any negligence on the part of defendant proximately caused the collision; and (2) that decedent was a passenger and not a guest.

Since it cannot be successfully claimed that an automobile would ordinarily leave a well-paved, straight, level and dry highway under the circumstances shown in the instant case and crash into a tree 15 feet beyond the edge of the pavement on the driver's left, without at least some negligence on the part of the person who was in exclusive control thereof, the doctrine of res ipsa loquitur must be applied. The presumption of negligence arising under that doctrine constitutes a prima facie case in favor of plaintiffs on that point. (*Judson* v. *Giant Powder Co.*, 107 Cal. 549 [40 P. 1020, 48 Am.St. Rep. 146, 20 L.R.A. 718]; *Brown* v. *Davis*, 84 Cal.App. 180 [257 P. 877]; *Leitert* v. *Pickwick Stages*, 68 Cal.App. 504 [229 P. 889]; *Mansfield* v. *Pickwick Stages*, 68 Cal.App. 507 [229 P. 890]; *Ireland* v. *Marsden*, 108 Cal.App. 632 [291 P. 912]; *Druzanich* v. *Criley*, 19 Cal.2d 439 [122 P.2d 53].) As was said in the case of *Druzanich* v. *Criley, supra,* at pages 444 and 445:

"Under the circumstances here presented, viz., the instrumentality being in the exclusive control of said respondent; the accident being such that in the ordinary course of things it would not have happened if the respondent driver had used proper care; and the injury having occurred without voluntary action on the part of appellant, the res ipsa loquitur doctrine must be held to have been applicable. (Citing authorities.) . . .

". . . As stated in *Ales* v. *Ryan*, 8 Cal.2d 82, 99 [64 P.2d 409]: 'The rule is well settled by a multitude of decisions of the appellate courts of this state to the effect that the inference of negligence which is created by the rule res ipsa lo-

quitur is in itself evidence which may not be disregarded by the jury and which in the absence of any other evidence as to negligence, necessitates a verdict in favor of the plaintiff. It is incumbent on the defendant to rebut the prima facie case so created by showing that he used the care required of him under the circumstances. The burden is cast upon the defendant to meet or overcome the prima facie case made against him.''

However, the evidence in the record before us is insufficient to support a judgment for plaintiffs on their first cause of action. The law of this state is well settled that the payment for gas and oil used on an automobile trip taken for the mutual pleasure of the driver and an injured occupant does not constitute compensation for the ride; and that, under circumstances such as those present in the instant case, the injured occupant is a guest and not a passenger. (*McCann* v. *Hoffman,* 9 Cal.2d 279 [70 P.2d 909]. See, also, *Whitechat* v. *Guyette,* 19 Cal.2d 428, 431 [122 P.2d 47]; *Druzanich* v. *Criley, supra,* and cases therein cited.)

In cases having to do with ''guest'' statutes it is manifest that the various courts have had distinctly in mind the question of whether the circumstances presented bring the case within the intent and purpose to be accomplished and the evils to be remedied by the enactment of such statute, as well as whether the injured party was within the language of the statutes being considered (*Rocha* v. *Hulen,* 6 Cal.App.2d 245 [44 P.2d 478]).

As to the second cause of action, respondent urges that there is no proof that the accident resulted from any wilful misconduct on the part of defendant. Indeed, the only evidence tending to prove the cause of the crash consists of the inferences to be drawn from the physical conditions and circumstances surrounding it.

As hereinbefore stated, the law is well settled that negligence must be presumed from unexplained circumstances such as those shown by the evidence in the instant case. The doctrine of res ipsa loquitur is applicable in cases of carriers by automobile for hire who must use the utmost care and diligence for the safe carriage of their passengers. In the case of *Brown* v. *Davis, supra,* at page 183, the court said:

''. . . 'A carrier of persons without reward must use ordinary care and diligence for their safe carriage.' . . . Does this difference in the degree of care required of the two classes of

carriers justify a distinction in the application of the doctrine of *res ipsa loquitur*? . . . The presumption originates from the nature of the act, not from the nature of the relations between the parties. . . . It is not perceived that the probability of injury being the result of negligence is any less in case of a carriage without reward than one for reward. The doctrine has been held applicable in cases in which the injuring party was bound to the exercise of ordinary care only. . . . The doctrine has been applied in cases of injury to invited guests, caused by the operation of automobiles. . . .''

The above quoted decision has often been followed. The inference arising under the doctrine of res ipsa loquitur has been held to be evidence of negligence, and in ''guest'' cases too numerous to cite, to be evidence of gross negligence, but we know of no case wherein such an inference was held to be evidence of wilful misconduct.

''Wilful misconduct depends upon the facts of a particular case, and necessarily involves deliberate, intentional or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom.'' (*Norton* v. *Puter,* 138 Cal.App. 253 [32 P.2d 172]; *Helme* v. *Great Western Milling Co.,* 43 Cal.App. 416 [185 P. 510]; *Olson* v. *Gay,* 135 Cal.App. 726 [27 P.2d 922]; *Walker* v. *Bacon,* 132 Cal.App. 625 [23 P.2d 520]; *Howard* v. *Howard,* 132 Cal.App. 124 [22 P.2d 279]; *Parsons* v. *Fuller,* 8 Cal.2d 463 [66 P.2d 430]; *Porter* v. *Hofman,* 12 Cal.2d 445 [85 P.2d 447].)

The case of *Meek* v. *Fowler,* 3 Cal.2d 420 [45 P.2d 194], arose out of injuries to a guest in one of the automobiles involved in an intersection collision. The court reversed an order granting a new trial after judgment for defendant and, at page 424, said:

''We have examined the entire record and, in our opinion, those portions thereof most favorable to the plaintiffs will not support a finding of wilful misconduct. The phrase 'wilful misconduct', as employed in our so-called guest statute, has been variously defined in the many cases that have had occasion to consider the same. We shall not attempt to reconcile the several definitions and applications given to this phrase. It is satisfactorily defined in *Turner* v. *Standard Oil Co.,* 134 Cal.App. 622, 626 [25 P.2d 988], wherein it is declared that ' ''wilful misconduct'', within the meaning of this

statute, may then be defined as intentionally doing something in the operation of a motor vehicle which should not be done or intentionally failing to do something which should be done under circumstances disclosing knowledge, express or to be implied, that an injury to a guest will be a probable result'.

"The case of *Howard* .v. *Howard,* 132 Cal.App. 124, 128 [22 P.2d 279], after defining gross negligence as set forth in *Krause* v. *Rarity,* 210 Cal. 644 [293 P. 62, 77 A.L.R. 1327], and what is meant by wilful misconduct as set forth in *Helme* v. *Great Western Milling Co.,* 43 Cal.App. 416 [185 P. 510], declares that ' "The mere failure to perform a statutory duty is not, alone, wilful misconduct. It amounts only to simple negligence. To constitute 'wilful misconduct' there must be actual knowledge, or that which in the law is esteemed to be the equivalent of actual knowledge, of the peril to be apprehended from the failure to act, coupled with a conscious failure to act to the end of averting injury."

" 'While the line between gross negligence and wilful misconduct may not always be easy to draw, a distinction appears from the definition given in that gross negligence is merely such a lack of care as may be presumed to indicate a passive and indifferent attitude toward results, while wilful misconduct involves a more positive intent actually to harm another or to do an act with a positive, active and absolute disregard of its consequences. It seems clear that in excluding all forms of negligence as a basis for recovery in a guest case, the legislature must have intended that to permit a recovery in such a case the thing done by a defendant must amount to misconduct as distinguished from negligence and that this misconduct must be wilful. While the word "wilful" implies an intent, the intention referred to relates to the misconduct and not merely to the fact that some act was intentionally done. In ordinary negligence, and presumably more so in gross negligence, the element of intent to do the act is present and any negligence might be termed misconduct. But wilful misconduct as used in this statute means neither the sort of misconduct involved in any negligence nor the mere intent to do the act which constitutes negligence. Wilful misconduct implies .at least the intentional doing of something either with a knowledge that serious injury is a *probable* (as distinguished from a possible) result, or the intentional doing of an act with a wanton and reckless disregard of its *possible* result.'

"Such intent and knowledge of probable injury may not be inferred from the facts in every case showing an act or omission constituting negligence for, if this were true, any set of facts sufficient to sustain a finding of negligence would likewise be sufficient to sustain a finding of wilful misconduct. As has been repeatedly declared, ' ''wilful misconduct'' means something more than negligence—more, even, than gross negligence.' (Citing authorities.)

"The evidence in the present case is capable of but one construction, viz., that the attempt of the driver of the guest car to cross the intersection in advance of the Peckinpah car, whether he was driving at a normal or an excessive rate of speed, was the result of his conclusion, mistaken though his judgment may have been, that he could safely negotiate said crossing before the arrival of the other car. His conduct under the circumstances constituted, at most, gross negligence. Upon the record now before us it cannot be said that he proceeded in utter disregard of, or that he was utterly indifferent to, the rights of his guests. While his judgment, under the circumstances confronting him, may have been poor, it does not appear that he was wantonly reckless in exposing his guests to danger, nor did his conduct partake of the nature of a wilful, intentional wrong.''

In the instant case we fail to find any evidence that the erratic course taken by defendant's automobile when it left the highway and crashed into a tree was the result of any intentional act or omission on her part. She seems to have been just as completely surprised as were her guests, and no better able to explain the cause of the accident. It might be inferred from the evidence that defendant driver fell asleep or otherwise became unconscious or inattentive, which might have been negligence on her part.

Experience has taught that certain kinds of automobile accidents rarely happen without negligence on the part of the driver; that in many, if not most, of such accidents, the driver alone knows just what happened; and, for that reason, if the driver cannot or will not explain the cause of the accident, those injured in the accident, in order to enforce their remedy, are entitled to the presumption of the driver's negligence arising under the doctrine of res ipsa loquitur upon proof that the accident occurred while the automobile was under the exclusive control of defendant. On the other hand, experience

teaches that most accidents of the kind in the instant case are not the result of the driver's intention to harm guests or even the result of the driver's disregard for the probable or possible consequences of any act, but that they are usually the result of negligence or inadvertence. From a reading of the entire record in the instant case in the light most favorable to plaintiffs, we are unable to find any evidence of wilful misconduct on the part of defendant, or evidence of any facts or circumstances from which wilful misconduct could be inferred. Therefore, it must be held that plaintiffs failed to prove their second cause of action.

Since there is not sufficient evidence in the record to support a judgment for plaintiffs on either of their alleged causes of action, the erroneous ruling hereinbefore discussed was not prejudicial to plaintiffs.

The attempted appeals from the order ''sustaining the demurrer of defendant to the evidence'' and from the order granting motion for nonsuit are dismissed.

The judgment appealed from is affirmed.

York, P. J., and Doran, J., concurred.