[Civ. No. 14700. Second Dist., Div. 2. Feb. 19, 1945.]

ELIZABETH A. STEWART, Respondent, v. JOHN PATRICK KELLY, Appellant.

Everett W. Thompson and Nourse & Jones for Appellant.

Samuel A. Rosenthal, Edward I. Pollock and Burton B. Crane for Respondent.

MOORE, P. J.—The question for decision is whether appellant wilfully misconducted himself while operating his own automobile, accompanied by a favorite friend as his guest. The

jury determined that he did not. The appeal is from the order of the court granting a new trial upon the insufficiency of the evidence to support the verdict. No proof other than that embalmed in the record was available.

Prior to March 28, 1943, the parties had been acquainted for thirteen years. Since March, 1940, their mutual fondness had been manifested by their rides together in appellant's automobile several times weekly. She had never operated a car after meeting appellant. On the day last mentioned he called upon the lady at her home in Los Angeles and invited her to join him in an excursion to Long Beach in his sedan of the vintage of 1941. They traveled south on Figueroa Street, a four-lane concrete highway from the city for the 16 miles or more to the scene of the collision. In that vicinity a row of telephone poles, about 125 feet apart, stood four feet from and parallel with the pavement. The speed of the vehicle was estimated by respondent to have been about 45 miles an hour. It was a "bright beautiful sunny afternoon." There was no visible traffic. As they proceeded southerly along Figueroa two incidents occurred, the evidence of which must supply the proof of appellant's wilful misconduct, if any. (1) At one time in discussing his foreman, he removed his right hand from the wheel to demonstrate how he would like to "bop" the foreman's head. As he did so his automobile swerved from the paved area onto the soft shoulder of the boulevard. Respondent requested him to decelerate his speed, keep his hand on the wheel and his eye on the road. The driving then continued in a normal manner. (2) Before they had gone not to exceed a mile after the "boping" demonstration, and while they were conversing, respondent took a cigarette from her purse and pressed the Chevrolet's automatic lighter with her left hand. Having held it in place longer than appellant deemed safe for the device, with his right hand he seized her wrist, jerked it out and angrily demanded to know whether she was trying to burn out the wires. Before respondent had answered the Chevrolet swerved onto the shoulder and collided with a telephone pole, causing respondent's injuries.

The action of a court in granting a new trial will not be disturbed in the absence of a clear showing of manifest abuse of discretion. (*Estate of Wall*, 183 Cal. 431 [191 P. 687]; *Locke Paddon* v. *Harris*, 219 Cal. 665 [28 P.2d 669].) But a motion for a new trial may be granted only when the

mover is "aggrieved," that is, has suffered prejudice. It will be allowed only when matters presented materially affect the substantial rights of the moving party. (*Wall* v. *Equitable Life Assurance Society*, 33 Cal.App.2d 112 [91 P.2d 145].) If plaintiff was not aggrieved by the verdict she was not entitled to a new trial. The court's wide discretion will not support an order granting a new trial if, upon all the evidence, the jury reached the only correct verdict. (*Mercantile Trust Co. of San Francisco* v. *Sunset Road Oil Co.*, 176 Cal. 461, 478 [168 P. 1037].) The record here furnishes no substantial evidence in support of respondent's recovery.

The frequent recurrence of actions founded upon the theory of wilful misconduct in which negligence only of the operator is discernible impels us to penetrate the veil of the statute to explore the philosophy underlying the right of a guest to recover from his host for injuries resulting from the latter's wilful misconduct.

Judging him in the light of normal human behavior appellant could not have been guilty of "wilful misconduct." There was not the slightest evidence of an "entire absence of care" on his part for the safety of his friend. His call at her home to solicit her to accompany him furnished special incentive to guard against her injury. He was impelled by every instinct of courtesy and chivalry to protect her. Moreover, sitting by her side, he must have known that any detriment to her would in all probability likewise have come to him. Compelled thus by the passion for self-preservation and by his amity and friendship for the lady to proceed with care, it would have required an unusual exhibition of depravity to warrant a finding that he had wilfully misconducted himself. Judging him by the norm of sane conduct, he could not have willed a wrongful act. His character is marked by industry and gentility. He had not displayed a wantonness; he had demonstrated a zealous regard for respondent's society; he had exhibited only a desire to enlarge her pleasures. Before the will to do an act arises in the consciousness there must first have been a desire to do such act. In bringing that desire to the surface of the universe of desires, the wish is born. It is only after the wish becomes a conscious concept and predominates over all other wishes, that the will to effect it may operate. In other words, declares Professor MacKenzie,* "in

_____
*"Manual of Ethics."

order that an event may be willed, it has to be accepted in its concrete totality.'' The distinction is emphasized by Lady Anne who wished the death of Gloucester, but she ''will not be executioner.'' Thus we conclude that within the moment of his motion to save the lighter from destruction it is not within the range of probability that appellant could have wished harm to respondent or to imperil her safety by swerving from the pavement. If he did not wish it, he could not have willed it.

■ Turning from philosophy to *stare decisis,* we find *that our courts have* with accurate phrase defined the true meaning of wilful misconduct. It is intentionally failing to do that which should be done under circumstances disclosing knowledge that an injury to a guest will probably result. (*Turner* v. *Standard Oil Co.,* 134 Cal.App. 622, 626 [25 P.2d 988].) It is ''conduct of a quasi-criminal nature, the intentional doing of something either with the knowledge that it is likely to result in serious injury or with a wanton and reckless disregard of its possible consequence.'' (*In re Burns,* 218 Mass. 8 [105 N.E. 601, Ann.Cas. 1916A 787].) Wilful misconduct depends upon the facts of a particular case, but necessarily involves deliberate, intentional, or wanton conduct in doing or omitting to perform acts, with knowledge or appreciation of the fact, on the part of the culpable person, that danger is likely to result therefrom, coupled with a conscious failure to act to the end of averting injury. (*Porter* v. *Hofman,* 12 Cal. 2d 445 [85 P.2d 447]; *Norton* v. *Puter,* 138 Cal.App. 253 [32 P.2d 172].) ■ The mere failure to perform a statutory duty is not, alone, wilful misconduct. (*Meek* v. *Fowler,* 3 Cal. 2d 420 [45 P.2d 194].) Such failure amounts to simple negligence only. While the word ''wilful'' implies an intent, the intention thereby referred to relates to the misconduct and does not mean merely the unsuccessful attempt to do a lawful act. Every act of a motorist, even though it results in an accident, is intended. But because he fails successfully to perform as he intended, or accidentally veers his car from his purposed course, such failure of his attempt to do an act, proper or improper, does not constitute the wilful misconduct contemplated in the guest statute. In the recent case of *Fiske* v. *Wilkie,* 67 Cal.App.2d 440 [154 P.2d 725] in which it was held that the injuries of the guest resulted from negligence, the court observed that there was no evidence of ''an inten-

tional act or omission.'' What the lawmakers intended by ''wilful misconduct'' was not negligence in a motorist's unsuccessful attempt to do an act while transporting his guest. They were not aiming thereby to prevent the doing of all acts which might be done unsuccessfully or without untoward event to the detriment of a guest. (*Meek* v. *Fowler, supra.*) The legislative aim was clearly to enable an innocent and confiding person to recover such damages as the latter might suffer from a malignant desire of the motorist to cause detriment to his guest or from a total abandon of moral duty resulting in injuries to the rider. The purpose was to give security against a motorist whose evil behavior flows from a consciousness that a serious injury is likely to occur to his guest. (*Turner* v. *Standard Oil Co., supra.*)

In *Porter* v. *Hofman, supra,* the facts parallel those here under consideration. Defendant while proceeding at 45 miles per hour turned her head while still holding the wheel to observe the conduct of two guest children on the rear seat. She lost control and the car skidded off the highway. She was innocent of wilful misconduct not only because she was conscious of no peril from her failure to look straight forward but also because she was not conscious of a failure to attempt to avert an injury. ██ In the instant case there is not a scintilla of evidence that would reasonably warrant the inference that appellant was conscious of either a peril to be apprehended from his act or of a failure to attempt to avert an injury to respondent. On the contrary, from the zeal he displayed in encouraging her recovery by his visits with her during her convalescence, it must be concluded that he would have forcibly attempted to avert injury to her had he entertained an instant's fear for her safety.

██ It is contended that defendant's behavior was wilful misconduct because after he had swerved from the pavement a short time prior to the collision he had been reproved by plaintiff for having taken his hand from the wheel. But such act at its worst was evidence of neither a wicked wish, nor wantonness, nor gross negligence. It was no more than an ordinarily negligent act of the variety frequently committed by motorists of discretion and caution. If holding the steering wheel by both hands be deemed the standard of good conduct on the highway, appellant's act in either instance could have been no worse than the act of shifting gears or of opening his

glove compartment to serve the comfort of himself or his companion. Reproof of a chauffeur's preceding conduct could be pertinent as proof of wilful or wanton behavior at a subsequent mishap only in the event that his first act had been quasi criminal, wanton, or grossly negligent.

The order is reversed with instructions to deny the motion.

McComb, J., concurred. Wood (W. J.), J., concurred in the judgment.

Respondent's petition for a hearing by the Supreme Court was denied April 19, 1945. Carter, J., voted for a hearing.