[Civ. No. 9509.   Third Dist.   July 31, 1959.]

MARY ELLEN OLSON, Appellant, v. ROBERT NORRIS JONES et al., Defendants; MONTE STUART MINUGH, Respondent.

C. Ray Robinson and Charles E. Coff for Appellant.

Hansen, McCormick, Barstow & Sheppard and R. A. McCormick for Respondent.

SCHOTTKY, J.—This is an appeal from a judgment of nonsuit in favor of defendants Minugh following a trial in the Merced County Superior Court arising out of an automobile collision.

On the afternoon of December 9, 1956, Monte Minugh, in the company of plaintiff, Mary Olson, and a Mr. and Mrs. Morehouse, was driving his automobile west on Hornitos Road in Mariposa County and collided with the other defendant, Robert Jones, who was driving his automobile east on Hornitos Road. Plaintiff, Mary Olson, was seated in the front seat of

Minugh's car at the time of the accident and received injuries growing out of the accident.

Thereafter, Mary Olson brought suit against Robert Jones alleging negligence and against Monte Minugh alleging wilful misconduct. C. G. Minugh was joined as the registered owner of the auto driven by Monte Minugh. Plaintiff recovered judgment against Robert Jones for $20,000, but a nonsuit was entered as to the defendants Minugh.

Since plaintiff was riding as a guest with defendant Monte Minugh she must, of course, predicate her case against him on wilful misconduct (there is no claim of intoxication), and the trial court ruled that a nonsuit should be entered in favor of Minugh because there was no evidence of any wilful misconduct.

Upon an appeal from a judgment of nonsuit it is the duty of an appellate court to consider the evidence and the inferences which reasonably may be drawn therefrom in the light most favorable to the plaintiff. All conflicts in the evidence and in the inferences which may reasonably be drawn therefrom must be resolved in favor of the plaintiff, and the court must accept as true all evidence adduced, direct or indirect, which tends to sustain plaintiff's case. (*Lashley* v. *Koerber*, 26 Cal.2d 83, 84 [156 P.2d 441].) In the light of this well-established rule, and after a careful study of the entire record, we have concluded that the court did not err in granting respondent's motion for a nonsuit.

The circumstances of the collision were as follows: Defendant Monte Minugh and his party were driving west on Hornitos Road on a dry, clear, sunny Sunday afternoon. The testimony, of defendant Monte Minugh was that his speed was about 25 or 30 miles per hour as he approached the place of the accident. He further testified as follows: "I wasn't driving too fast for the road. We were in no hurry. We were merely enjoying a sunny afternoon ride, . . . I was merely driving what I felt was the safe speed for that road."

The defendant Jones estimated the speed of the Minugh car at about 30 miles an hour when he saw it; he stated, "He wasn't exceeding any speed limit."

The plaintiff testified that she never noticed the speedometer on Minugh's car and never formed any estimate as to the speed of the car at any time that day; she never made any protest or comment to defendant Minugh about his driving; and as far as she was concerned he was driving in a satisfactory manner.

The prima facie speed limit at the place of the accident was 55 miles per hour.

Both Minugh and Jones testified that the speed of the Jones car as it approached the accident scene was about 25 to 30 miles per hour. Minugh could not tell whether or not Jones reduced his speed before the collision, as the accident happened too rapidly.

The accident occurred just after the Minugh car came over a rise at a point where the road curved to the right. There was a gradual slope to the crest of the rise and a somewhat steeper slope as Minugh started down the other side. The Minugh car was headed downhill and the Jones automobile was coming uphill when the accident happened.

On the north side of the road, to Minugh's right, there was a bank about 6 feet high, just high enough to conceal an automobile approaching the curve from the opposite direction.

Defendant Minugh testified that the Jones car was about 50 to 75 feet from his automobile when he first saw it. He saw the Jones car as soon as it was visible. Mr. Minugh further stated: ". . . I saw him as soon as I cleared the corner where I could see down the road."

The testimony of defendant Jones was substantially the same. He was about 50 to 60 feet from the Minugh car when he first saw it. That was when it first came into Jones' line of vision from around the corner. Jones was positive that he saw the Minugh automobile "when it first showed up."

Miss Olson, the plaintiff, testified that she saw the Jones automobile as it came around the curve and that was "The instant before we hit it."

Mr. Minugh's testimony was that Jones was on his right side of the road when Minugh first saw the car; that the Jones car appeared to be over to its right farther than it actually was, but it seemed to be cutting the corner and coming across to Minugh's side of the road.

With reference to the time when he first saw the Minugh automobile, the defendant Jones testified: ". . . the left side of my automobile was very close to the center of the road. It could have been a foot to the left or it could have been a little the other way but there is no line there, but I was very, very close to the center road with the left of my car."

Mr. Jones further stated that his car pulled farther to the left as he approached the point of impact, although he tried to turn it to the right. Defendant Jones conceded that his

automobile was some 2 to 4 feet over on the wrong side of the road at the time of impact.

In a statement to Officer Maybee, defendant Minugh stated: "We had been on a picnic and were coming back this way so that we could go by that big lake (Merced Falls). I wasn't overdoing the speed limit as I came over the hill, I wasn't going so fast but what I stayed in my own lane. I guess I was going 25. I saw this other car coming toward me, and he was cutting the corner. I didn't slow down right then because I thought he had plenty of time to get back over. When I saw that he was coming straight towards me, I hit my brakes, and then we hit."

Minugh's car left 42 feet of skid marks commencing right at or just over the crest of the rise, and the vehicles were then no more than 50 to 75 feet apart. The collision occurred just over the rise, as Minugh started down. There were no skid marks left by the Jones car.

Defendant Minugh testified: "Well, naturally, when you go around a corner, especially a blind corner, you have your foot on the brake, and I believe something flashed through my mind that this fellow was going to run into me, and I also at the same time, I thought that perhaps he might have time to turn back. I was wondering why he wouldn't turn back. This probably took maybe a tenth of a second or so, and then I immediately hit my brakes. It all flashed through my mind together, and I can't remember whether I hit my brakes first and was thinking this while I was skidding, or whether I thought and then skidded. But it happened very fast and it is hard to get all these facts in the proper order, I believe."

Defendant Jones testified: "It all happened very sudden; just almost unavoidable. When they said accident in this case, they really mean accident. There was nothing intentional."

The California rule as to what constitutes wilful misconduct is set forth in the recent case of *Gillespie* v. *Rawlings*, 49 Cal. 2d 359 [317 P.2d 601]. The facts of that case as stated on page 363 of the opinion were as follows:

"The circumstances of the collision were as follows: The weather was clear and sunny. Defendant was driving north on a two-lane highway which curved slightly toward her left. Defendant's husband (who was fatally injured in the collision) was in the rear seat. Plaintiff was asleep in the front seat. Jean Novobilsky, who was driving ahead of defendant at about 50 to 55 miles an hour, saw defendant in his rear view mirror. As defendant came behind the Novobilsky car

she turned to her left, out of her lane of traffic, and collided almost 'head on' with a southbound car. There is no evidence of tire or skid marks attributable to defendant's car on the highway after the collision.''

The court stated at page 367:

''On the issue of wilful misconduct, the evidence is insufficient to support a determination favorable to plaintiff. The jury were instructed as follows on this issue:

'' 'The words ''wilful misconduct'' have a meaning in the law, additional to that which they have in common usage. If we were to use the words in their ordinary sense, they would mean simply the indulging in wrongful conduct by conscious choice. Such conduct might consist of doing something that ought not to be done or in failing to do something that ought to be done. But in order to be a basis for liability to a guest under our law, the misconduct must be something more than intentional and wrongful; it must be done under circumstances which show either knowledge that serious injury to the guest probably will result, or a wanton and reckless disregard of the possible results.

'' 'Wilful misconduct means something different from and more than negligence, however gross the negligence may be. A guest may not recover against her host unless the conduct of the host amounted to wilful misconduct, and that means intentional, wrongful conduct, done either with knowledge that serious injury to the guest probably will result, or with a wanton and reckless disregard of the possible results. . . .

'' '[I]f you should find that defendant was negligent, and if you should find that she intentionally did something that was wrongful and which was a proximate cause of injury to plaintiff, still a case of willful misconduct is not established unless you further find that such conduct was done with knowledge that serious injury to the plaintiff probably would result, or with a wanton and reckless disregard of the possible results.'

''The law stated in these instructions accords with the law as developed in the cases, among others, of *Meek* v. *Fowler* (1935), 3 Cal.2d 420, 425-426 [45 P.2d 194]; *Parsons* v. *Fuller* (1937), 8 Cal.2d 463, 468 [66 P.2d 430]; *Weber* v. *Pinyan* (1937), 9 Cal.2d 226, 230-235 [70 P.2d 183, 112 A.L.R. 407]; *Porter* v. *Hofman* (1938), 12 Cal.2d 445, 447-448 [1, 2] [85 P.2d 447]; *Cope* v. *Davison* (1947), 30 Cal.2d 193, 198-199 [180 P.2d 873, 171 A.L.R. 667]; *Mercer-Fraser Co.* v. *Industrial Acc. Com.* (1953), 40 Cal.2d 102, 116-118 [8-14] [251

P.2d 955]; *Hawaiian Pineapple Co.* v. *Industrial Acc. Com.* (1953), 40 Cal.2d 656, 662-663 [2-10] [255 P.2d 431]; and *Lynch* v. *Birdwell* (1955), 44 Cal.2d 839, 847-848 [8] [285 P. 2d 919]. On the evidence defendant could not properly be found guilty of that wanton and reckless disregard of possible consequences, or that knowledge of probable injury, which characterizes wilful misconduct. Viewing the evidence most favorable to plaintiff it appears that defendant's pulling into the southbound lane and into an oncoming car was a culpable error of judgment which amounted to negligence only.''

Appellant makes a vigorous and lengthy attack upon the judgment of nonsuit. She contends that it is fairly inferable from the evidence that respondent Minugh was driving at an excessive rate of speed on a narrow serpentine road; that he intentionally risked a head-on collision with Jones by holding his course although Jones approached him straddling the center line; that he knew or reasonably should have known that to continue headlong on his course toward Jones without reducing his speed would probably result in serious injury to Mary Ellen, his guest; that his decision to continue heading toward Jones' vehicle also shows ''wanton and reckless disregard of the possible result'' of his act.

Appellant's argument is unconvincing because it is not supported by the record. The fallacy in appellant's argument is well illustrated by the following quotation from her opening brief:

*"Yet despite the risks of driving on this narrow country road there is evidence that Minugh drove over it faster than 55 miles per hour! As was shown above at page 11, the only speed restriction placed before the jury was the prima facie speed limit at the point of the accident which was 55 miles per hour. As was also shown above at pages 11 and 12, Minugh was cited for and pleaded guilty to violation of California Vehicle Code, Section 510, which is speeding, and also to violation of California Vehicle Code, Section 527, which is driving over the center line of a road. From this a jury could infer that Minugh was driving on this section of road in excess of 55 miles per hour. The above description of the road is such that the jury could further reasonably infer that Minugh's speed was so far in excess of a reasonable speed under all of the circumstances as to constitute wilful misconduct."*

We do not believe that any inference that Minugh was driving 55 miles per hour can be drawn from the fact that

he pleaded guilty to a violation of section 510 of the Vehicle Code, which reads as follows: ''No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent having due regard for the traffic on, and the surface and width of, the highway and in no event at a speed which endangers the safety of persons or property.'' A plea of guilty to a claimed violation of section 510 might be some evidence in support of a finding that Minugh was guilty of negligence, but it would not support a finding that he was guilty of wilful misconduct. ■ For as stated in *Porter* v. *Hofman*, 12 Cal.2d 445, at page 448 [85 P.2d 447] : ''The mere failure to perform a statutory duty is not alone, wilful misconduct. It amounts only to simple negligence.'' And as stated in *Flannery* v. *Koch*, 103 Cal.App.2d 55, at page 57 [228 P.2d 580] : '' 'The mere failure to perform a statutory duty is not, alone, wilful misconduct.' [Citation.] Hence Miss Liberto's failure to stop before entering 14th Street did not constitute wilful misconduct. . . .''

■ None of the evidence pointed to by appellant will support a finding of wilful misconduct, for as stated in *Gillespie* v. *Rawlings, supra*, ''A guest may not recover against her host unless the conduct of the host amounted to wilful misconduct, and that means intentional, wrongful conduct, done either with knowledge that serious injury to the guest probably will result, or with a wanton and reckless disregard of the possible results.''

■ Appellant makes the further contention that Officer Keyser's opinions of the safe speed on this road and Minugh's actual speed were admissible evidence; that the safe maximum speed of a vehicle at a particular place is a proper subject of expert testimony; and that Officer Keyser is qualified to give expert testimony regarding speeds. The record shows that Officer Keyser testified that he had had nine years experience as a highway patrol officer; that he was familiar with the roadway at the scene of the accident and had been over it many times; and that he had tested the safe speed for an automobile at that particular corner. He was then asked if he had filed his report of his investigation of the accident and replied that he had. Counsel for appellant then offered the report in evidence. Counsel for respondent objected and the court properly sustained the objection. In Witkin on California Evidence it is stated at page 328 : ''The requirement of personal knowledge as the basis of a record is the chief barrier to the introduction of a police report of an accident. The

report is a 'record of an act, condition or event' (see *supra,* § 286), but is often made by an officer who did not see the accident and includes both hearsay statements of others and opinions of the officer. If so, it is inadmissible. . . ." ██ And in *Hoel* v. *City of Los Angeles,* 136 Cal.App.2d 295, the court said at page 309 [288 P.2d 989] : "Not all official reports and not all business records are made competent by the cited sections of the code. Essentially accident reports, especially those compiled by police at the scene of an accident—based on statements of participants, bystanders, measurements, deductions and conclusions of their own—fail to qualify as admissible official records or business records. [Citations.] That accident reports are not admissible under statutes such as our Uniform Business Records as Evidence Act (Code Civ. Proc., §§ 1953e-1953h) was held in *Palmer* v. *Hoffman,* 318 U.S. 109 [63 S.Ct. 477, 87 L.Ed. 645, 144 A.L.R. 719]. . . ."

The following appears in the record: "Q. And did you place upon your report the safe speed limit at this point? A. I did. MR. McCORMICK: Now just a moment, I will object again, your Honor, counsel is indirectly attempting to do what your Honor has already sustained. THE COURT: Yes, that is the opinion of the officer again. That is a question for the jury to determine in this suit from all the evidence in the case, what a safe speed was on a turn upon that mountain on that day. MR. COSHOW: Very well, your Honor. I have no further questions."

It thus appears that counsel for appellant did not ask Officer Keyser the direct question as to what his opinion was as to a safe speed at that corner, nor did he make an appropriate offer of proof.

The trial court was evidently of the opinion that Officer Keyser's opinion as to what was a safe speed was not admissible, and if the direct question had been asked of the officer, it would have been error to sustain an objection to such a question. For as stated in *Enos* v. *Montoya,* 158 Cal. App.2d 394, at page 399 [322 P.2d 472] : "Where, as was here the case, the jury's knowledge of the roadway must be limited to that shown by the evidence, it would seem to be an unrealistic position to insist that what was a prudent speed on the subject curve was a matter exclusively within the jury's fact finding power which should not be 'invaded' by opinion evidence. The proper rule would appear to be to allow such opinion evidence to assist the jury, if the jury, applying

proper instructions, such as were here given, deems such evidence to be helpful. As was said in *People* v. *Cole*, 47 Cal.2d 99, at 105 [301 P.2d 854, 56 A.L.R.2d 1435] : 'The jurors, of course, were not bound by the opinion of the witness but were free to determine the weight to which it was entitled and to disregard it if they found it to be unreasonable, and they were so instructed.' '' (See also *Risley* v. *Lenwell*, 129 Cal.App.2d 608, 631 [277 P.2d 897].)

Even though the trial court may have been in error in stating that the officer was not qualified to express an opinion as to a safe speed at the place of the accident, there was no error in sustaining an objection to the introduction in evidence of the officer's report.

We have hereinbefore stated the California rule as to what constitutes wilful misconduct. Whether there was wilful misconduct depends upon the facts of the particular case, weighed in the light of the well-settled rule. If under the facts as shown by the evidence reasonable inferences may be drawn upon which a finding of wilful misconduct may be based, a nonsuit may not properly be granted. But where as in the instant case there is no reasonable basis in the evidence for a finding that respondent Minugh was guilty of wilful misconduct the granting of a nonsuit was proper. At most, respondent was guilty of negligence only.

The judgment is affirmed.

Van Dyke, P. J., concurred.

A petition for a rehearing was denied August 25, 1959, and appellant's petition for a hearing by the Supreme Court was denied September 22, 1959.