[Civ. No. 25423. First Dist., Div. One. May 26, 1969.]

LYDIA OLSON, Plaintiff and Appellant, v. WILLIAM R. CLIFTON et al., Defendants and Respondents.

·Lewis & Fonnesbeck and L. A. Fonnesbeck for Plaintiff and Appellant.

Popelka, Graham, Van Loucks & Allard and Malcolm A. King for Defendants and Respondents.

SIMS, J.—Plaintiff has appealed from dual judgments denominated "Order and Judgment in Accordance with Motion for Directed Verdict" and "Judgment of Nonsuit." The judgments were entered on motions of the defendants[1] following the taking of testimony on the liability phase of an action to recover damages for personal injuries suffered by plaintiff when the automobile in which she was riding crashed into a power pole.

Plaintiff contends that the court erred in granting defendants' motion for a nonsuit because there was sufficient evidence to sustain a finding that her injuries proximately resulted from the wilful misconduct of the defendants under the guest law (see Veh. Code, § 17158, fn. 3, *infra*), and that the court erred in ruling as a matter of law that the accident occurred while she was riding as a guest "upon a highway" (see *O'Donnell v. Mullaney* (1967) 66 Cal.2d 994, 996-997 [59 Cal.Rptr. 840, 429 P.2d 160]). These contentions are examined and found to be without merit. The judgment must be affirmed.

*The Evidence*

On the evening of June 18, 1962, plaintiff Lydia Olson accepted a social invitation from defendant William R. Clif-

---

[1]The driver and his mother, as owner of the car, are named as defendants. For convenience the driver will be referred to as the defendant in the singular.

ton for a ride in his car. At the time both parties were minors and defendant was driving his mother's 1961 Ford Falcon with her permission and knowledge. At approximately 11 p.m. defendant pulled into a gasoline station at the corner of Blue Hills Drive and Highway 9 in Santa Clara County, to allow plaintiff an opportunity to use the restroom. Defendant in driving away collided with a telephone pole 100 to 150 feet north of the station.

Defendant testified that in leaving the driveway of the station he accelerated to approximately 30 miles per hour, and got out onto the paved portion of Highway 9. He felt a pull about 150 feet out and then hit the pole. Before the collision he attempted to apply the brakes but did not know whether they had time to take effect. He felt the car go over some ruts between the road and the pole.

Plaintiff, who was seated partly on the console and partly in the front right seat, had bent down to replace cigarettes in her purse at the time the automobile left the gasoline station. She was not looking at the roadway. She felt the car vibrate slightly and accelerate. To her it felt like the car was going over a bumpy road, over gravel "it wasn't like going on a freeway or a paved section." Defendant yelled something which startled plaintiff, she sat up, and turned to her left. At this point the car hit the pole. Plaintiff felt no sensation of braking prior to the collision, just acceleration. Plaintiff's impression was that the car came to rest in very close proximity to the pole, and that the pole was 8 or 9 feet from the paved portion of the roadway.

The owner of the gasoline station saw the vehicle leave at a moderate rate of speed and did not hear tires squealing or the engine being gunned.

Neither plaintiff nor defendant had consumed any alcohol during the ride. Although plaintiff had complained about defendant's driving on previous occasions, she had not complained during that evening. At the time of the accident, defendant claimed that it had occurred because the steering froze, and the brakes would not work. Plaintiff testified that two years after the accident defendant told her the accident was not caused by mechanical failure, and that it was his fault. Defendant denied that his expression of remorse in 1964 carried any such connotation. Plaintiff's father, and the police officer who reported to the scene of the accident, found nothing wrong with the car's brakes. No examination of the steering wheel was possible because of the condition of the car.

The police officer also testified to the following physical evidence of the area. The service station was on the northeast corner of the intersection of Highway 9 and Blue Hills Drive. The telephone pole was 234 feet north of the intersection of Highway 9 and Blue Hills Drive. The pole was located 8 feet east of the paved edge of the roadway, just off the unimproved gravel portion. The service station was set back from the highway in contemplation of its widening. There was paving in front of the station facing onto Highway 9, but north of the station the area east of the highway was unimproved. From the east edge of the paving of the two-lane surface of Highway 9, the unimproved area was dirt and gravel. The officer testified that the collision took place "eight feet from the edge of the paving." The right front of the automobile collided with the pole and the vehicle bounced back 8 feet after the collision to the edge of the roadway leaving its wheels on the paved portion of the road. The automobile had traveled between 100 and 150 feet from the service station to the point of collision. The officer found no evidence on the surface of the highway or the unimproved portion between the service station and the pole to indicate the path the vehicle had traveled, and no evidence of braking action. He could determine no defects in the roadway itself. There were no seat belts in the car. There was major damage to the front end of the car, and the fender had been pushed all the way into the wheel, pinning the tire in place. The surface of Highway 9 was dry, the weather was clear, and Highway 9, the roadway itself, was a straight level road.

## Wilful Misconduct

In addition to the evidence referred to above, the plaintiff, following argument on the defendant's motion, made the following offer of proof: ". . . if the plaintiff were recalled to the stand, she would testify that she had discussed her going out with the defendant Clifton that night before this collision took place and had informed him that night that she didn't want to go out with him any more and that they hadn't parked for two hours, as he testified, and that when they left the station, he accelerated the car, although she didn't see the roadway, but that he accelerated the car ahead and continued to accelerate the car until the time it struck the pole, that he was going what seemed to her from what she could tell to be a fast rate of speed, more than 30 miles an hour, and that there was no braking action . . . That he

didn't swerve the car to either direction but went straight into the pole." The plaintiff complains that the court erred in rejecting this offer of proof. She additionally urges that the court erroneously evaluated the preponderance of the evidence, rather than the sufficiency of the evidence, in ruling on defendant's motions (cf. Code Civ. Proc., § 631.8 with § 581c), and that it erroneously applied a rule of liberal, rather than strict, construction in interpreting the guest statute. The ruling of the court on the offer of proof, and the extrinsic remarks of the judge are of no consequence at this phase of the case, if the evidence, including that offered and rejected (see *Eatwell* v. *Beck* (1953) 41 Cal.2d 128, 133-135 [257 P.2d 643]), is insufficient as a matter of law to sustain a finding of wilful misconduct.

▌ "The same test governs the power of the trial court to grant a nonsuit, direct a verdict, or render a judgment notwithstanding the verdict. [Citation.]" (*Knight* v. *Contracting Engineers Co.* (1961) 194 Cal.App.2d 435, 442 [15 Cal. Rptr. 194].) It is, therefore, unnecessary to consider the power of, or the propriety of the action of the court in granting a motion for directed verdict after the jury had been discharged, and after it had already disposed of the case by granting the motion for nonsuit.

▌ The test to be applied is set forth in *Olson* v. *Jones* (1959) 172 Cal.App.2d 539 [342 P.2d 440], as follows: "Upon an appeal from a judgment of nonsuit it is the duty of an appellate court to consider the evidence and the inferences which reasonably may be drawn therefrom in the light most favorable to the plaintiff. All conflicts in the evidence and in the inferences which may reasonably be drawn therefrom must be resolved in favor of the plaintiff, and the court must accept as true all evidence adduced, direct or indirect, which tends to sustain plaintiff's case. (*Lashley* v. *Koerber,* 26 Cal. 2d 83, 84 . . .)" (172 Cal.App.2d at p. 541. See also *McBride* v. *Atchison, Topeka & S. F. Ry. Co.* (1955) 44 Cal.2d 113, 116 [279 P.2d 966]; *Lubeck* v. *Lopes* (1967) 254 Cal.App.2d 63, 70-71 [62 Cal.Rptr. 36]; *Knight* v. *Contracting Engineers Co., supra,* 194 Cal.App.2d 435, 442; and *Strnod* v. *Abadie* (1960) 181 Cal.App.2d 737, 740 [5 Cal.Rptr. 627].)

▌ Wilful misconduct has recently been explicated as follows: "The difference between willful misconduct and negligence, although sometimes difficult to determine as applied to specific facts, is substantial. An intent to injure is

not a necessary ingredient of willful misconduct within the guest statute; willful misconduct implies the intentional doing of something either with knowledge, express or implied, that serious injury is a probable, as distinguished from a possible, result, or the intentional doing of an act with a wanton and reckless disregard of its consequences. [Citations.] Negligence, of course, is the failure to exercise ordinary care under the circumstances. [Citation.]" (*Williams* v. *Carr* (1968) 68 Cal.2d 579, 584 [68 Cal.Rptr. 305, 440 P.2d 505]. See also *Gillespie* v. *Rawlings* (1957) 49 Cal.2d 359, 367-368 [317 P.2d 601]; *Cope* v. *Davison* (1947) 30 Cal.2d 193, 198-199 [180 P.2d 873, 171 A.L.R. 667]; *Porter* v. *Hofman* (1938) 12 Cal.2d 445, 447-448 [85 P.2d 447]; *Morrison* v. *Townley* (1969) 269 Cal.App.2d 863, 868 [75 Cal.Rptr. 274]; Prosser, Law of Torts (3d ed. 1964) § 34, p. 189.)

█ The plaintiff suggests that the evidence permits an interpretation that the defendant accelerated on a straight line over the rough gravel east of the roadway, and deliberately ran into the power pole. Motivation for this maniacal, or suicidal and homicidal action is predicated upon the offer of proof of defendant's rejection by the plaintiff. Corroboration is sought on the grounds that plaintiff's testimony of defendant's recantation of the theory of mechanical failure shows that he fabricated his original explanation of the accident.

This theory is pure speculation and is not supported by the evidence. The alleged rejection was not mentioned in plaintiff's opening statement. The offer of proof does not show the effect on the defendant of plaintiff's informing him that she did not want to go out with him any more. There is no evidence to show a quarrel or anger on the part of the defendant. It must be assumed that if there were some reason to support the necessary state of mind for a deliberate foolhardy act on the part of defendant, that it would have been fully explored during the case in chief through examination of the plaintiff and cross-examination of the defendant. In *Strnod* v. *Abadie, supra*, the court stated: "In the case at bar, there is no evidence whatever as to the state of mind of the defendant immediately prior to or at the time of the accident. There is no showing whatever that he had previously been sleepy, had dozed off, or was in any way aware of the approach in him of a soporific condition. There is no evidence whatever of the presence or lack of other traffic on the highway, nor of the conduct of other possible drivers. He might have fallen asleep without realizing his drowsiness, he might have been forced

off the road by another driver, he might have mistaken his direction by reason of the fog, he might have wilfully and deliberately driven down the embankment. There is no evidence from which any one particular inference could be drawn.

■ " 'A legal inference cannot flow from the nonexistence of a fact; it can be drawn only from a fact actually established. (Citation.) ■ It is axiomatic that "an inference may not be based on suspicion alone, or on imagination, speculation, supposition, surmise, conjecture, or guesswork." ' " (*Eramdjian* v. *Interstate Bakery Corp.*, 153 Cal. App.2d 590, 602 . . .) " (181 Cal.App.2d at p. 740.)

■ This case is governed by the foregoing principles. Numerous cases demonstrate that facts, such as those actually established here—losing control of a car and hitting an object off the side of the roadway—are insufficient to establish wilful misconduct.[2] The court properly granted the motion for nonsuit insofar as plaintiff, as a guest, sought to recover for wilful misconduct of the defendant.

## *"Upon a Highway"*

In *O'Donnell* v. *Mullaney* (1967) 66 Cal.2d 994 [59 Cal. Rptr. 840, 429 P.2d 160] the court noted, "The sole question presented is whether the guest law is applicable to an accident on a private roadway as distinguished from a public highway." (66 Cal.2d at p. 996.) The court concluded, "In light of the plain language used by the Legislature, there is no rational basis to construe the statute, as urged by the defendants, to mean that it is to be applied when part of the ride is on a public highway but the negligent injury is inflicted on private property." (*Id.*, at p. 997.)

The *O'Donnell* case was determined adversely to the guest in the Court of Appeal in January 1967 (55 Cal.Rptr. 827). Hearing was granted by the Supreme Court on March 15, 1967. Thereafter, the pretrial order in this case embraced only the issue of liability predicated upon wilful misconduct. *O'Donnell* was subsequently decided, and on the eve of the

---

[2]See: *Gillespie* v. *Rawlings* (1957) 49 Cal.2d 359, 367-368 [317 P.2d 601]; *Porter* v. *Hofman* (1938) 12 Cal.2d 445, 447-450 [85 P.2d 447]; *Sheldon* v. *City of Burlingame* (1956) 146 Cal.App.2d 30, 32-33 [303 P.2d 344]; *Stewart* v. *Kelly* (1945) 68 Cal.App.2d 122, 124-128 [155 P.2d 850]; *Fiske* v. *Wilkie* (1945) 67 Cal.App.2d 440, 448-452 [154 P.2d 725]; *Katz* v. *Kuppin* (1941) 44 Cal.App.2d 406, 407-410 [112 P.2d 681]; *Spencer* v. *Scott* (1940) 39 Cal.App.2d 109, 113-114 [102 P.2d 554]; *Stacey* v. *Hayes* (1939) 31 Cal.App.2d 422, 425-429 [88 P.2d 165]; and *Newman* v. *Solt* (1935) 8 Cal.App.2d 50, 51-53 [47 P.2d 289].

trial plaintiff's motion to amend her complaint to include a cause of action for ordinary negligence was denied without prejudice. In his opening statement the attorney for plaintiff asserted, "Our contention is that there was not only negligence in this case but misconduct, willful misconduct on his part that caused the collision and inflicted on Lydia the severe lacerations, from which she has been suffering and for which she has undergone a great deal of treatment. The elements of willfulness—what he did was willful—this misconduct, certainly this wild driving, coming out of that station, and his willful misconduct on his part that led directly to the crash. There was no other reason for it, and it was the direct, proximate cause of the injuries that she received.

"Now, basically, that's the case as it stands on liability."

The court observed at the conclusion of both opening statements, "We will have a problem later on that if this did not occur on a highway, then, the guest statute cannot apply.

"Now, I am probably going to have to rule before the end of the case, as a matter of law, whether this section will apply. If I were to rule that this section would not apply, then, the law of negligence would apply. However, I cannot make a ruling on that until I find out what the facts are, until the plaintiff puts on her case. Therefore, I want to be fair to the plaintiff. But that will not apply unless I make that determination, that this guest statute will not apply, and I cannot make that decision until the plaintiff has put in her case. Then, the Court is going to rule, as a matter of law, at that time whether it applies."

The plaintiff renewed her contention that ordinary negligence should govern in connection with the argument on the defendant's motion for a nonsuit. The court ultimately ruled, "There is a motion pending for amendment of the pleadings to include a cause of action based upon negligence. The motion to amend the complaint and the pleadings is denied on the basis that the Court determines that the guest statute applies as a matter of law."

■ Plaintiff complains of the foregoing rulings of the court. She asserts that the question of whether the accident occurred while she was riding as a guest "upon a highway" was a question of fact, and that it was error to refuse to permit her to amend to show a cause of action for ordinary negligence. She assails the reasons advanced by the trial court in support of its rulings. All of her contentions depend on the

application of the principles of *O'Donnell* to the facts of this case.

The officer testified that the accident occurred on a highway; that he found the car a few feet from a power pole at the edge of the paved roadway; that the pole was on the unimproved gravel portion of the highway approximately 8 feet from the edge of the paved roadway, and 20 feet from the center line of the paved roadway. According to the officer the approximate distance along the roadway from the entrance to the highway from the service station to the pole was no more than 150 feet. The officer acknowledged that there was no indication in his report that the accident happened on a private roadway. He affirmed that the area between the gas station and the paved roadway had been condemned for the purpose of widening the highway. The gas station attendant identified both a diagram and a photograph which showed a two-lane roadway which can be entered from the gas station, and which is located in an unimproved area, unencumbered except for a line of poles and a curb running north and southeasterly of the roadway. He testified that the poles on the east side of the roadway were eventually moved in connection with the widening of the highway.

From the foregoing the trial court correctly concluded that the accident occurred upon a highway as that term is defined in section 360 [formerly § 81] of the Vehicle Code, as follows: " 'Highway' is a way or place of whatever nature, publicly maintained and open to the use of the public for purposes of vehicular travel." Highway as so defined should be distinguished from roadway which is defined in section 530 [formerly § 83] as follows: "A 'roadway' is that portion of a highway improved, designed, or ordinarily used for vehicular travel." (See *Frates* v. *Ghirardi* (1941) 48 Cal.App.2d 596, 599-600 [120 P.2d 82]; *Mecchi* v. *Lyon Van & Storage Co.* (1940) 38 Cal.App.2d 674, 680 [102 P.2d 422, 104 P.2d 26] [disapproved on other grounds *Alarid* v. *Vanier* (1958) 50 Cal.2d 617, 623-624 [327 P.2d 897]]; and *Summers* v. *Dominguez* (1938) 29 Cal.App.2d 308, 311 [84 P.2d 237].)

Plaintiff does not contend that the accident occurred on private property as in *O'Donnell*. She asserted before the trial court: "To make it clear in the record here, the reason that we are contending that the decision of O'Donnell against Mullaney applies is not because they were on a private road but because they were not on the highway—and that means a roadway." This reading of *O'Donnell* is predicated upon the

misquotation of the provisions of Vehicle Code section 360 found in the opinion. After quoting section 17158 of the Vehicle Code,[3] the opinion states: "The word 'highway' is defined in the Vehicle Code to mean a *'public roadway.'* (Veh. Code, § 360.) As originally enacted, the statute limiting liability to guests specifically was limited to accidents on 'public' highways (Stats. 1929, ch. 787, p. 1580). The word 'public' was deleted in 1935 (Stats. 1935, ch. 27, p. 154), when the statute was incorporated into the Vehicle Code. By such incorporation the definition of 'highway' as a *'public roadway,'* then found in section 81 of the Vehicle Code, became applicable. Thus the conclusion is inescapable that the term 'highway' in section 17158 must be interpreted to mean a *public roadway* and does not include *private roadways.*

"The words 'during the ride' appearing in that statute and italicized above, refer to the ride mentioned earlier in the statute, namely, 'a ride in any vehicle upon a highway.'" (66 Cal.2d at pp. 996-997; italics added.) Neither section 360 (Stats. 1959, ch. 3, § 360, p. 1534), nor former section 81 (Stats. 1935, ch. 27, § 81, p. 98), on which it was based, contain the word "roadway." The trial court properly restricted *O'Donnell* to the facts with which it was concerned, that is, whether the death of the guest resulted during a ride on a public highway or on private property.[4] Even if it be assumed, as may be inferred from the testimony of plaintiff, that the defendant never reached the paved roadway, it is clear that he was on a public highway and not on private property after leaving the service station. *O'Donnell,* therefore, does not apply.

It is recognized that the guest law must be strictly construed. (See *Williams* v. *Carr, supra,* 68 Cal.2d 579, 587; *O'Donnell* v. *Mullaney, supra,* 66 Cal.2d 994, 997; *Elisalda* v. *Welch's Sand & Gravel Co.* (1968) 260 Cal.App.2d 46, 52 [67

---

[3]Section 17158 is quoted and emphasized as follows: "No person riding in or occupying a vehicle owned by him and driven by another person with his permission and no person who as a guest accepts *a ride in any vehicle upon a highway* without giving compensation for such ride, nor any other person, has any right of action for civil damages against the driver of the vehicle or against any other person legally liable for the conduct of the driver on account of personal injury to or the death of the owner or guest *during the ride,* unless the plaintiff in any such action establishes that the injury or death proximately resulted from the intoxication or wilful misconduct of the driver." (66 Cal.2d at p. 996.)

[4]A further question not presented by *O'Donnell* or by this case is whether the place where the actionable act or omission took place, or the place where the injuries or death was suffered should govern. The cases referred to above, see footnote 2, suggest the former.

Cal.Rptr. 57]; and *Whitehill* v. *Strickland* (1967) 256 Cal. App.2d 837, 840 [64 Cal.Rptr. 584].) Moreover, cogent reasons have been advanced to show that it should be abolished or declared unconstitutional. (See Lascher, *California Guest Statute* (1968) 9 Santa Clara Law. 1.) Nevertheless, until it is repealed or adjudged unconstitutional when properly so attacked, it represents the mandate of the Legislature of this state and must be applied, as it was here, in cases to which it unquestionably applies.

The judgment of nonsuit is affirmed. The appeal from the purported judgment in accordance with motion for directed verdict is dismissed as an appeal from a void judgment.

Molinari, P. J., and Elkington, J., concurred.